NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
SHAUNA R. MADISON (SBN 299585)
smadison@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Center Office
840 Malcolm Road Suite 200
Burlingame, CA 94010
Telephone:   (650) 697-6000
Facsimile:    (650) 692-3606

DEREK HOWARD (SBN 118082)
derek@dhowlaw.com
**HOWARD LAW FIRM**
42 Miller Avenue
Mill Valley, CA 94941
Telephone:   (415) 432-7192
Facsimile:    (415) 524-2419

DANIEL J. MULLIGAN (SBN 103129)
dan@jmglawoffices.com
**JENKINS MULLIGAN & GABRIEL, LLP**
10085 Carroll Canyon Road, Suite 210
San Diego, CA  92131
Telephone:   (415) 982-8500
Facsimile:    (415 982-8515

*Attorneys for Plaintiff and Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MONICA SUD**, individually, and on behalf of all others similarly situated <br><br> Plaintiff, <br><br> **COSTCO WHOLESALE CORPORATION**, a Washington Corporation; **CHAROEN POKPHAND FOODS, PCL,** a Bangkok, Thailand Corporation; **C.P. FOOD PRODUCTS, INC**., a Maryland Corporation <br><br><br> Defendants. | **CLASS ACTION COMPLAINT FOR:** <br><br> 1.  Violations of California Business & Professions Code § 17200 *et seq.* <br><br> 2.  Violations of California Business & Professions Code § 17500 *et seq.* <br><br> 3.  Violations of the Civil Code § 1750 *et seq.* <br><br> **DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ......................................................................................... 1

II.  JURISDICTION AND VENUE ................................................................... 9

III. PARTIES ...................................................................................................... 11

    A.   Plaintiff ................................................................................................ 11

    B.   Defendants .......................................................................................... 11

    C.   Agency ................................................................................................ 12

    D.   Conspiracy, Aiding and Abetting, and Concerted Action .................. 12

IV.  FURTHER FACTS GIVING RISE TO LIABILITY ................................. 12

    A.   Costco ................................................................................................. 12

    B.   CP Foods ............................................................................................ 18

V.   SLAVE LABOR IN THE FARMED PRAWN INDUSTRY ...................... 21

    A.   Human Trafficking, Forced Labor are Prevalent in the Thai Fishing Industry ......... 21

    B.   Definitions of Slavery, Forced Labor and Trafficking ...................... 33

    C.   California Consumers Require Accurate Information About Supply Chains ............. 34

    D.   International Response to Forced Labor in Thailand .......................... 36

    E.   National Response to Slavery and Human Trafficking ...................... 37

        1.   United States' Response to Modern Slave Labor ...................... 38

        2.   California Statutes to Combat Slavery and Human Trafficking ......... 40

    F.   Defendants' Participation is Critical to the Tainted Products Reaching California Consumers ......................................................................... 41

    G.   CP Foods' Admissions Regarding the Abuses in the Supply Chain ......... 42

VI.  CLASS AND REPRESENTATIVE ALLEGATIONS ................................ 42

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**VII. CLAIMS FOR RELIEF** ........................................................................... 44

FIRST CLAIM FOR RELIEF
Unlawful Business Acts and Practices
California Business & Professions Code § 17200, *et seq.*
(Against Costco, Charoen Pokphand Foods Public Company Limited and C.P. Food Products, Inc.) ....................................................................................................................44

SECOND CLAIM FOR RELIEF
Misleading and Deceptive Advertising
California Business and Professions Code Section 17500, *et seq.*
(As To Defendant Costco) ...............................................................................46

THIRD CLAIM FOR RELIEF
Consumer Legal Remedies Act, Civil Code Section 1750, *et seq.*
(As To Defendant Costco) ...............................................................................47

**VIII.  PRAYER FOR RELIEF** .................................................................. 49

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                          ii

*"If you buy prawns or shrimp from Thailand, you will be buying the product of slave labour."*

Aidan McQuade, director of Anti-Slavery International

## I.    INTRODUCTION

1.    Plaintiff Monica Sud ("Plaintiff"), brings this action on behalf of herself and on behalf of all others similarly situated in California against Defendant Costco Wholesale Corporation ("Costco"), Charoen Pokphand Foods Public Company Limited ("CP Limited")  and C.P. Food Products, Inc. ("CP Inc.") (collectively the CP entities are referred to as "CP Foods") (CP Foods and Costco are collectively referred to as "Defendants").  Plaintiff's allegations are made on information and belief except as to allegations regarding Plaintiff herself, which are based on personal knowledge.  Plaintiff alleges as follows:

2.    This case arises from the devaluing of human life.  Plaintiff and other California consumers care about the origin of the products they purchase and the conditions under which the products are farmed, harvested or manufactured.  Slavery, forced labor and human trafficking are all practices which are considered to be abhorrent, morally indefensible and acts against the interests of all humanity.

3.    Slavery is outlawed, not just in the United States, but in almost every country in the world.

4.    As explained herein, the United Nations, almost all of the world's countries, the United States federal government and the State of California have all engaged in efforts to prevent, suppress and punish trafficking, including the presence of trafficking in the supply chain for seafood.

5.    In California, as well as the United States in general, consumers do not expect the products that they purchase to be derived from, manufactured or otherwise created or made available through the use of slavery, human trafficking or other illegal labor practices.

6.    One consumer good that is undisputedly tainted by the use of slave labor is farmed prawns that come from the country of Thailand, and the international waters off the coast of Thailand in Southeastern Asia and the country of Indonesia.  This seafood is eventually shipped

to the United States, in many varieties, including frozen prawns and meals that contain frozen prawns.

7.    The market for prawns in the United States is immense.

8.    Thailand is the third largest exporter of seafood in the world, with exports valued at approximately $7.3 billion in 2011.[1]

9.    Plaintiff is one of many California consumers that, collectively, purchase tens of millions pounds of frozen seafood products annually.  The largest selling product is farmed prawns, also referred to in the industry and by consumers as "shrimp."[2]

10.    There is substantial competition for the sale of farmed prawns in California.  There is also substantial competition in the United States, Western Europe and Asia.

11.    As alleged herein, Defendant Costco attempts to keep prices in the United States and California as low as it can, in order to increase the sale of farmed prawns.

12.    Costco is aware that the farmed prawns it purchases from Southeast Asian producers, including Defendant CP Foods, and then resells to California consumers, is derived from a supply chain that depends upon documented slavery, human trafficking and other illegal labor abuses.

13.    Defendant does not advise U.S. consumers, in its packaging or otherwise, that the supply line for farmed prawns has been tainted by the use of slave labor in Thailand, and other nearby locations in international waters, including Indonesia, on Thai-flagged ships, and that there has been no eradication of this plague.

---

[1] Department of Fisheries, Ministry of Agriculture and Cooperatives, Thailand (2013), '*Action Plan and Implementation by the Department of Fisheries in Addressing Labour Issues and Promoting Better Working Conditions in Thai Fisheries Industry*' http://www.nocht.m-society.go.th/album/download/367802a4be46d2f4132c7a028e50980f.pdf, p.2 (last visited August 17, 2015).
[2] National Fisheries Institute, AboutSeafood.com, https://www.aboutseafood.com/about/about-seafood/top-10-consumed-seafoods (last visited August 17, 2015).

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

14.     This use of trafficked labor occurs on vessels that are known as "ghost ships"[3] and the practice is also referred to as "pirate fishing."



(Source: Environmental Justice Foundation's documentary "Slavery at Sea – The Continued Plight of Trafficked Migrants in Thailand's fishing Industry.")



(Image of Kway Thaung, Director of the Myanmar Association in Thailand; Source: Environmental Justice Foundation's documentary "Slavery at Sea - The Continued Plight of Trafficked Migrants in Thailand's Fishing Industry")

---

[3] "Ghost ships" are ships that are not officially registered, therefore they are "ghosts" that do not exist.

15.     Rather than truthfully advising consumers about the problems with its supply chain through truthful packaging, labeling and other means, Costco continues to market and sell the products in packages which only advise that the contents are imported as a product from a foreign country such as "Product of Thailand" or "Product of Indonesia."

16.     Defendant Costco continues to purchase farmed prawns from Southeast Asian producers, including Defendant CP Foods, despite the fact that Costco knows that the feed for farmed prawns is the product of pirate fishing and the use of "ghost ships." CP Foods is a many tentacled global conglomerate. CP Limited is the parent company, based in Thailand. CP Inc. is the U.S. distribution arm. Costco has an extensive and long-standing relationship with CP Foods and features its products prominently on its shelves.

17.     Under this veil of silence, the tainted supply chain which starts with Defendant CP Foods, ultimately leads directly to the California shelves of Costco, and unwittingly onto the dinner plates of millions of Californians.

18.     Not only does Defendant fail to disclose the exact origin of the farmed prawns, including the company the prawns come from, and the fact that slavery and other labor abuses are endemic to the supply chain – it affirmatively represents to consumers that it makes efforts to monitor its suppliers to eradicate human rights abuses in its supply chain.

19.     Specifically, Costco publicly represents that it does not tolerate human trafficking and slavery in its supply chain, yet it continues to purchase the tainted farmed prawns from Defendant CP Foods.   Costco publicly states:

**Costco Disclosure Regarding Human Trafficking and Anti-Slavery**
        Costco has a supplier Code of Conduct which prohibits human rights abuses in our supply chain. Practices such as human trafficking, physical abuse of workers, restricting workers' freedom of movement, confiscation of passports and worker documentation, unsafe work environments, failure to pay adequate wages, excessive and/or forced overtime, illegal child labor, and many other aspects of worker welfare are addressed by the Code. Our suppliers contractually agree to follow the Code and to ensure that their sub-suppliers also comply. We may acknowledge and accept a supplier's code as equivalent to our Code.
        To evaluate compliance, we arrange for the audit of facilities of selected suppliers, with an emphasis on suppliers of private label merchandise and when Costco Wholesale is the importer. Audits are performed by independent third-party auditors who specialize in social responsibility audits. While we retain the right to conduct unannounced audits, as a practical matter, some minimum

amount of notice is given to comply with security concerns and to allow the supplier to collect records that are reviewed during the audit.

If we discover a violation of our Code of Conduct, we respond in a manner commensurate with the nature and extent of the violation. "Critical violations" are considered serious enough to require immediate and decisive remedial action and may result in the termination of the business relationship. For less serious violations, we allow the supplier reasonable time to develop and implement a plan for remediation. In those instances we conduct follow-up audits to monitor progress.

In general, we prefer working with the supplier to correct Code violations rather than immediately terminating the relationship. Termination is unlikely to correct the underlying issue and may cause further hardship to workers and their families who depend upon the employment. However, if the supplier fails to make satisfactory progress toward improvement, we will cease our business relationship with that supplier.

Members of Costco's buying team who manage a supplier relationship will continue to be provided with in-person and online training. The training covers the Code of Conduct and its importance to our business and to the workers who produce the merchandise we sell. We encourage anyone who is aware of violations of the law or our Code to notify their management, our Code of Conduct Compliance team or utilize Costco's whistleblower site: costco.ethicspoint.com.[4]

20.     As far as the market for farmed prawns is concerned, any representation by Costco that slavery in the supply chain is not allowed is simply false.  In the most recent August 6, 2015 Trafficking in Person's Report ("TIP") Report, the United States Department of State again designated Thailand as a Tier 3 violator of minimum standards for the elimination of trafficking and stated that the Government of Thailand "is not making significant efforts to [eliminate trafficking]"  (*See* Section IV.A., *infra*.)

21.     Defendant Costco continues to unlawfully induce consumers to buy Costco farmed prawn products, supplied by Defendant CP Foods through the use of slave labor.

22.     Further, Defendants profits because consumers unknowingly create increased sales and profits for Defendants, buying from Costco at a price higher than they would otherwise be willing to pay if, indeed, they would purchase such tainted prawns willingly at all.

23.     This case seeks to halt these inhumane practices and obtain relief for Defendants' unlawful and unethical conduct.

---

[4] Costco Disclosure Regarding Human Trafficking and Anti-Slavery, http://www.costco.com/disclosure-regarding-human-trafficking-and-anti-slavery.html, (last visited August 18, 2015).

24.      This unlawful and unethical conduct has been documented in great detail by non-governmental organizations including, the London-based Environmental Justice Foundation ("EJF"), which brought to light this horrendous problem in a ground-based report entitled, "*Sold to the Sea.*"[5]  Leading world news organizations, including *The Guardian*, which conducted a lengthy investigation into slavery on Thai and Thai flagged fishing vessels, have also documented egregious circumstances where fishermen are forced to work in inhumane conditions – where some fishermen have been shackled, beaten or tortured, and many have been murdered.[6]



(Image of deceased slave laborer; Source: Guardian documentary, Supermarket Slave Trail)

---

[5] Environmental Justice Foundation, http://ejfoundation.org/campaigns/oceans/item/seafood-not-slavefood
[6] Revealed: Asian slave labour producing prawns for supermarkets in US, UK, http://www.theguardian.com/global-development/2014/jun/10/supermarket-prawns-thailand-produced-slave-labour, (last visited August 17, 2015; Images as seen on the Guardian documentary, Supermarket Slave Trail (2014), available at http://www.theguardian.com/global-development/2014/jun/10/supermarket-prawns-thailand-produced-slave-labour, (last visited August 17, 2015) and the AP documentary, US Supply Chain Tainted By Slave Caught Shrimp (2014), available at http://news.yahoo.com/ap-investigation-slaves-catching-fish-buy-011905896--finance.html, (last visited August 17, 2015).



(Image of Thai flagged shipping vessel;
Source: Guardian documentary, Supermarket Slave Trail)



(Image of imprisoned slave laborers;
Source: AP Documentary - US Supply Chain Tainted By Slave Caught Shrimp)



(Source: AP Documentary - US Supply Chain Tainted By Slave Caught Shrimp)



(Source: Environmental Justice Foundation – "Sold to the Sea" Report)

25.     Given its representations about excluding slave labor from its chain of supply, as well as U.S. and California statutes regarding slave labor and consumer rights, Costco has a duty

to accurately disclose to consumers that slavery, forced labor and human trafficking have been tainting and continue to taint Costco's supply chain for farmed prawns.

26. Costco is aware that consumers lack the material information that human trafficking, including how slave labor and other repugnant labor practices taints Costco's supply chain. Consumers, including Plaintiff, purchase frozen farmed prawns derived from illegal labor when they otherwise would not have done so.

27. Costco is aware, as most recently made evident in the United States Department of State August 2015 TIP report (Section IV.A, *infra*), that the Thai Government is not only suffering from corruption and outright cooperation with human traffickers but the Thai Government itself is making an insufficient effort to eliminate human trafficking from the farmed prawn industry. Costco unlawfully continues to turn a blind eye to these and other indictments of the farmed prawn industry.

28. Plaintiff brings this class action on behalf of herself and all other similarly situated Californians for violation of California's consumer protection statutes, including California Civil Code § 1750, *et seq.*; the Consumer Legal Remedies Act (the "CLRA"); California Business and Professions Code § 17200 *et seq.*, the Unfair Competition Law ("UCL").

## II.   JURISDICTION AND VENUE

29. This court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §§ 1332 (a) and (d)(2). In the aggregate, Plaintiff's claims and the claims of other members of the Class exceed $5,000,000 exclusive of interest and costs, and the class of California residents are citizens of a state other than the state of citizenship of the Defendant.

30. This Court has jurisdiction over Defendant Costco because it is a corporation authorized to do business in California and is registered with the California Secretary of State, does sufficient business in California, has sufficient minimum contacts with California, and intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of products in California to render the exercise of jurisdiction by this Court appropriate.

31.     Furthermore, the purchases of frozen farmed prawns that are the subject of this action occurred in California.

32.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a)(2) because the products at issue are sold and consumed in this jurisdiction, and Defendant has received substantial compensation from the sale of the products at issue by doing business in this jurisdiction.

33.     This Court has *in personam* jurisdiction over the Defendants because the Defendants, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of frozen prawns throughout the United States, including in this District; and, (c) had substantial aggregate contacts with the United States as a whole, including in this District.  The Defendants conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

34.     The activities of the Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States, including commerce in this District.  The Defendants' products are sold in the flow of interstate commerce.

35.     Frozen prawns farmed by CP Foods abroad and sold for use in the United States are goods brought into the United States for sale, and therefore constitute import commerce.  To the extent any frozen farmed prawns, which are the subject of this Complaint, are purchased in the United States, and such products do not constitute import commerce, the Defendants' unlawful activities with respect thereto, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce.  The conduct, and its effect on United States commerce described herein, proximately caused injury to Plaintiff and members of the Class in the United States.  By reason of the unlawful activities hereinafter alleged, the Defendants substantially affected commerce throughout this District, causing injury to Plaintiff and members

of the Class.  The Defendants, directly and through their agents, engaged in activities affecting consumers in California.

36.     The Defendants' wrongdoing described herein adversely affected persons in California who purchased Defendants' prawn products, including Plaintiff and members of the Class.

**III.   PARTIES**

**A.     Plaintiff**

37.     Plaintiff Monica Sud is a resident of the state of California who has purchased and paid for farmed prawns at Costco, which were imported from Thailand and/or Thai-flagged ships working in waters near Thailand during the alleged class period.   The purchases occurred in this judicial district.

**B.     Defendants**

38.     Defendant Costco Wholesale Corporation ("Costco") is a Washington corporation with its principal place of business located at 999 Lake Drive, Issaquah, Washington 98027.  At all times relevant herein, Costco conducted business in the Northern District of California.

39.     Defendant Charoen Pokphand Foods Public Company Limited ("CP Limited") is a Thai corporation with its principal place of business at 313 C.P. Tower, Silom Road, Silom, Bang Rak, Bangkok 10500, Thailand.  CP Limited is a giant global conglomerate with dozens of subsidiaries.  Defendant CP Limited – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold frozen farmed prawns and prawn products throughout this District, during the class period.

40.     Using its web-like structure of companies, CP Limited is one of the world's largest exporters of seafood.  The CP entities buy fishmeal, which contains "trash fish," farmed frequently from suppliers and/or sub-suppliers that own, operate or buy from pirate boats manned with slaves that catch the trash fish to use in the fishmeal, which is then fed to the farmed prawns.

41.     Defendant C.P. Food Products, Inc. ("CP Inc.")  is an importer and distributor of seafood in the United States.  CP Inc.'s principal place of business located at 7135 Minstrel Way, Suite 203 Columbia, Maryland 21045.

42.     Collectively, CP Limited and CP Inc. are referred to herein as "CP Foods."

**C.    Agency**

43.     At all times mentioned in the causes of action alleged herein, each and every Defendant was an agent and/or employee of each and every other Defendant.  In performing the acts or omissions stated herein, each and every Defendant was acting with the course and scope of this agency or employment and was acting with the consent, permission, or authorization of each of the remaining Defendant.  All actions of each Defendant as alleged in the causes of action stated herein were ratified and approved by every other defendant or their officers or managing agents, and by agreeing to actively conceal the true facts regarding the acts or omissions.

**D.    Conspiracy, Aiding and Abetting, and Concerted Action**

44.     In committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of a common course of conduct, and have acted in concert via agreement with, and conspired with, one another in furtherance of the improper acts, plans, schemes, and transactions that are the subject of this Complaint.

45.     In addition, each of the Defendants rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, and was aware of his, her or its overall contribution to and furtherance of the wrongdoing.

**IV.    FURTHER FACTS GIVING RISE TO LIABILITY**

**A.    Costco**

46.     Costco is a membership-only retailer that sells a wide range of merchandise. Costco operates 663 membership warehouses with 468 of them being the United States, including California.[7]

47.     Costco operates its membership warehouses based on the concept that low prices on a wide range of products will produce high sales volumes and rapid inventory turnover.[8].

---

[7] *See* Costco's 2014 Annual Report.
[8] *See* Costco Form 10-K, For the Fiscal Year Ended August 31, 2014

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

48. This inventory turnover, combined with efficient distribution and reduced handling of merchandise, enables Costco to operate profitably.[9]



49. For at least twenty years, Costco has sold goods at its locations under the "Kirkland" brand.

50. Costco expressly states that the Kirkland brand represents "quality and value."[10]

51. Costco further states that its Kirkland products must "be equal or better to the national brands and must offer a savings to our members."

52. During fiscal year 2014, Costco's net sales were $110 billion.[11]

53. Approximately 22% of Costco's annual net sales are for food (including dry and institutionally packaged food).[12]

---

[9] *Id.*
[10] Kirkland Signature Means Quality and Value, http://www.costco.com/kirkland-signature.html (last visited July 9, 2015)
[11] *See* Costco Form 10-K, For the Fiscal Year Ended August 31, 2014.
[12] *Id*

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**CLASS ACTION COMPLAINT**

13

54.     Costco advertises that "[i]n 1999, Costco adopted a supplier Code of Conduct ("The Code") and revised the Code in 2010.

55.     The Code prohibits human rights abuses, including, but not limited to, human trafficking, physical abuse of workers, restricting workers' freedom of movement, confiscation of passports and worker documentation, failure to pay minimum wage, forced or mandatory overtime, illegal child labor.[13]

56.     The Code further states that Costco requires "suppliers to comply with local laws regarding workers' minimum age, rest days and overtime wages.  Our suppliers contractually agree to follow the Code and to ensure that their *sub-suppliers* also comply."[14]

57.     To ensure that all of its suppliers and sub-suppliers are in compliance with The Code, Costco states that it conducts audits of its suppliers.

58.     Costco continues to market and sell frozen farmed seafood from Southeast Asia, knowing that many of its suppliers, including Thai based or Thai-flagged ship suppliers specifically including Defendant CP Foods, do not comply with The Code.

59.     In a documentary entitled "*Sold to the Sea*," the Environmental Justice Foundation documented that migrant workers in countries surrounding Thailand are used throughout the Thai seafood industry to work as slaves.

60.     In June 10, 2014, the London-based *Guardian* newspaper published the findings of a lengthy ground-based investigation into human rights abuses in the Thai seafood industry, specifically explaining that Costco sells prawns that come from the tainted supply chain.[15]

/ / /

---

[13] Costco Disclosure Regarding Human Trafficking and Anti-Slavery, available at http://www.costco.com/disclosure-regarding-human-trafficking-and-anti-slavery.html, (last visited August 18, 2015).
[14] *Id*.
[15] "Revealed: Asian slave labour producing prawns for supermarkets in US, UK," http://www.theguardian.com/global-development/2014/jun/10/supermarket-prawns-thailand-produced-slave-labour, last visited August 17, 2015.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



(On Costco shelves as of August 18, 2015)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



(On Costco shelves as of August 18, 2015)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



(On Costco shelves as of August 18, 2015)

61. In reply, Costco released the following statement:



**Costco said:**
It will require its suppliers of Thai shrimp to take corrective action to police their feedstock sources.

theguardian

(Source: Guardian documentary, Supermarket Slave Trail)

62. For years, and presently, Costco has allowed human trafficking and slave labor to taint its supply chains. The use of slave labor by its suppliers and/or sub-suppliers allows Costco to maintain competitive prices and produce high sales.

63. Costco is aware that if its customers knew that the supply chain was "tainted" with unsafe, unethical practices it would lose sales.

**B.    CP Foods**

64. Defendant CP Foods is one of the world's largest exporters of seafood. CP Foods uses fishmeal, containing "trash fish" that is derived from suppliers and/or sub-suppliers that own, operate or buy from pirate boats manned with slaves that catch the trash fish to use in the fishmeal which is then fed to the farmed prawns.

65. The occurrence of the use of trash fish is a fundamental and well documented part of the prawn supply chain.[16]

---

[16] Revealed: Asian slave labour producing prawns for supermarkets in US, UK, http://www.theguardian.com/global-development/2014/jun/10/supermarket-prawns-thailand-produced-slave-labour, (last visited August 17, 2015) *see also* Environmental Justice Foundation, http://ejfoundation.org/campaigns/oceans/item/seafood-not-slavefood, (last visited August 13, 2015).

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**CLASS ACTION COMPLAINT**

66.     In 2014, CP Foods total sales revenue reached THB $426,039 million, reflecting a 9% growth over 2013.  This translates into approximately $12,630,862 US Dollars. [17]

67.     CP Foods ships its prawns products to the U.S. for sale and consumption.  CP Products, like the one shown below, can be found in Costco's stores and elsewhere in California.



68.     CP Foods is aware that consumers require transparency about the source of its food products.

69.     In its 2014 Annual Report, CP Foods stated that:

> Consumers have increasingly placed greater values on convenience, health, freshness and cleanness, safety, as well as environmentally-friendliness when it comes to making decisions about food products.  In addition, they are concerned about whether the raw materials come from sustainable sources that comply with legal requirements.  In response to such concerns, CPF must carefully examine all of its operations, starting **at the product development phase, all the way to procurement of raw materials, production, and delivery**. (emphasis added).

70.     CP Foods is aware that the International Labor Organization (ILO), United States government and the Thai government have identified the use of slave labor in Thai waters and by Thai-flagged ships to raise farmed prawns as a matter that is rampant, receiving inadequate attention from the industry and under ongoing criminal and international investigations. [18]

---

[17] *See* CP Food 2014 Annual Report.
[18] *See* Thai PM vows to fight human trafficking in sex trade, fishing industry; http://www.trust.org/item/20141229120241-qyxjg/?source=jtOtherNews1 (last visited July 10, 2015);

71.   In the documentary entitled, "*Supermarket Slave Trail*," CP Foods' executive Bob Miller admitted on camera that its huge supply chain was plagued with human rights violations, which include human trafficking and slave labor.[19]

72.   Most recently, on August 13, 2015, the *Sacramento Bee* reported the results of an Associated Press investigation and the ensuing capture of the Silver Sea 2, a massive Thai owned 2,285 ton refrigerator cargo ship believed to carry slave caught seafood.[20]   The ship was close to leaving Indonesian waters when it was captured by the Indonesian navy.   The August 13, 2015 article reported that "An AP investigation revealed their catch reached the supply chains of major U.S. food sellers…."

73.   The *Sacramento Bee* August 13, 2015 story also stated that: "…enslaved workers who recently returned home from Papua New Guinea to Mynamar said that they had regularly loaded fish onto Silver Sea cargo ships, which ferried the catch back to Thailand.   Burmese slaves rescued from Benjina, among hundreds interviewed by the AP in person or in writing, also said they had been trafficked in Thailand and brought to fish in Indonesia aboard the Silver Sea 2."[21]

74.   Although CP Foods has publicly stated that it is "committed" to ensuring that its supply chain is free from these human rights violations, the August 13 media reports, and others, demonstrate that human trafficking and/or slave labor remains an integral part of its supply chain for prawn farms and thus CP Foods is directly complicit in the use of all manners of forced labor to sell its products and to do so at a lower price than it could otherwise charge, all without revealing to California consumers any of its knowledge of the slave labor used to produce its prawns.

---

*see also* End Slavery, save our seas, http://www.bangkokpost.com/opinion/opinion/417622/end-slavery-save-our-seas (last visited July 10, 2015); U.S. Demoted Thailand and Qatar for abysmal human trafficking record, http://www.theguardian.com/global-development/2014/jun/20/thailand-qatar-downgraded-human-trafficking-report (last visited July 10, 2015).
[19] Guardian documentary, Supermarket Slave Trail (2014), available at http://www.theguardian.com/global-development/2014/jun/10/supermarket-prawns-thailand-produced-slave-labour, (last visited August 17, 2015).
[20] "Indonesia naps ship believed to carry Slave Caught Fish," http://www.sacbee.com/news/business/article30977967.html, (last visited August 17, 2015).
[21] *Id.*

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

## V.    SLAVE LABOR IN THE FARMED PRAWN INDUSTRY

75.    The market for farmed Thai prawns is a multi-billion dollar market worldwide. The United States is the largest importer of Thai seafood in the worldwide market.



76.    Shrimp (or "prawns") is the No. 1 consumed seafood in the United States.[22] Approximately ninety percent (90%) of the shrimp consumed in the United States are imported farmed shrimp (as opposed to more expensive wild caught shrimp).[23]

77.    Thailand is the No. 1 exporter of farmed shrimp to the United States.[24]  The seafood export industry in Thailand, which includes prawns, is an estimated $7.3 billion industry.[25]

78.    Thailand's seafood industry employs approximately 650,000 persons.

### A.    Human Trafficking, Forced Labor are Prevalent in the Thai Fishing Industry

79.    As described throughout this pleading, labor abuses, including slavery and human trafficking, are rampant in the Thai fishing industry which includes not just the country of Thailand itself, but also fishing in international waters by Thai flagged ships.

---

[22] National Fisheries Institute – AboutSeafood.com, Top 10 Consumed seafood, https://www.aboutseafood.com/about/about-seafood/top-10-consumed-seafoods (last visited July 29, 2015).
[23] FishWatch U.S. Seafood Facts, Outside the U.S., http://www.fishwatch.gov/farmed_seafood/outside_the_us.htm (last visited July 29, 2015).
[24] United States Department of Agriculture Economic Research Service, Aquaculture Trade, http://www.ers.usda.gov/datafiles/Aquaculture/Trade/aquaculturetraderecent.pdf  (last visited July 29, 2015).
[25] The Nation, The Ugly Truth About Your Shrimp Cocktail, http://www.thenation.com/article/ugly-truth-about-your-shrimp-cocktail/ (last visited July 29, 2015).

80.     The existence of pirate ships, and human abuses has long been known to Defendants.

81.     A 2009 survey by the United Nations Inter-Agency Project on Human Trafficking (UNIAP) found that 59 percent of the interviewed migrants trafficked aboard Thai fishing boats reported witnessing the murder of a fellow worker.

82.     According to former slave laborers, pirate ships sometimes store the dead bodies of killed workers in their holds along with the trash fish.[26]  "Nearly half the Burmese men surveyed by the AP said they were beaten, or witnessed others being abused.  They were made to work almost nonstop for nearly no pay, with little food and unclean water.  They were whipped with toxic stingray tails, shocked with Taser-like devices and locked in a cage for taking breaks or attempting to flee.  Sometimes, the men said, the bodies of those who died were stashed in the ship's freezer alongside the fish.  Workers on some boats were killed for slowing down or trying to jump ship.  The Burmese fishermen said others flung themselves overboard because they saw no escape.  Myint [the subject of this particular article] spotted several bloated bodies floating in the water."

/ / /

---

[26] *See e.g.*, AP: Myanmar fisherman goes home after 22 years as a slave, published July 1, 2015, available at http://bigstory.ap.org/article/d8afe2a8447d4610b3293c119415bd4a/myanmar-fisherman-goes-home-after-22-years-slave, (last visited August 17, 2015).

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

1
2
3
4
5
6
7
8
9
10



(Image of the hands of a former slave laborer, severely damaged because of forced labor; Source: Environmental Justice Foundation's documentary ("Slavery at Sea - The Continued Plight of Trafficked Migrants in Thailand's Fishing Industry")

11
12
13
14
15
16
17
18
19
20
21
22
23
24



(Image of the arm of a former slave laborer, severely damaged because of forced slave labor; Source: Environmental Justice Foundation's documentary "Slavery at Sea - The Continued Plight of Trafficked Migrants in Thailand's Fishing Industry")

25
26
27
28

83.    The rise of abusive practices has coincided with the collapse of Thai fishing grounds due to overfishing, which has made it less economically viable to catch wild fish using a paid workforce.

84.    As the most valuable native species of fish disappear fishing efforts have focused more and more on trash fish and aquaculture (farming).  The following chart demonstrates the shift away from wild-caught fish and towards farming:



(Source: "Characterizing Fishing Effort and Spatial Extent of Coastal Fisheries," Stewart et al.)

85.    The Thai fisheries have also moved farther and farther offshore and fishing boats have begun staying at sea for longer and longer periods of time:



(Source: Department of Fisheries, Thailand)

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

86.     Basically more and more effort has to go into smaller and smaller catches, increasingly leading to the use of slave labor:



87.     Even in a modern developed country like Thailand, jobs on fishing boats are notoriously dangerous and the work conditions are beyond onerous.  For many reasons, including the prevalence of other less dangerous jobs, most Thai citizens will not willingly work in the fisheries.

88.     An estimated 90% of the Thai fish processing workforce, which is estimated at 650,000 workers, are migrants who come to Thailand looking for fair work:



(Source: Environmental Justice Foundation)

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

89.     Prawn farmers in Thailand, or in waters off the coast of Thailand, raise the prawns primarily by feeding them fishmeal containing "trash fish."

90.     The Food and Agricultural Organization of the United Nations defines "trash fish" as follows:

> "Low value/trash fish" is a loosely used term that describes fish species with various characteristics but they are generally small in size, have low consumer preference and have little or no direct commercial value.



(Source: Guardian documentary, Supermarket Slave Trail)



(Source: Guardian documentary, Supermarket Slave Trail)



(Source: Guardian documentary, Supermarket Slave Trail)

91. Fishmeal is not economically valuable as human food. The fishmeal that is fed to the farmed prawns is directly linked to forced labor under inhumane conditions. The poor working conditions, combined with low pay offered, has resulted in unmet demand for voluntary laborers. This has spurred a market for trafficking and exploitation.

92. Workers who seek legitimate jobs, but find themselves caught up in the dangerous fishing industry, are unable to escape the harsh conditions. Thai slave brokers supply the majority of the workforce that catches the trash fish at sea. There are an estimated two to three million migrant workers in Thailand.[27]

93. Ship owners who operate the illegal slave trade rely upon this form of servitude and slavery to offset higher fuel and other costs. By refusing to pay laborers, the suppliers are able to maximize profit margins. CP Foods is able to increase its profits by keeping its supply costs down. Costco also benefits by maximizing its profits in the form of increased sales of prawns.

94. According to the 2014 TIP Report, authored by the U.S. Department of State, "[a] significant portion of labor trafficking victims within Thailand are exploited in commercial

---

[27] U.S. State Dept., Trafficking in Persons Report: June 2014, 372 (2014) available at http://www.state.gov/j/tip/rls/tiprpt/2014/?utm_source=NEW+RESOURCE:+Trafficking+in+Persons+R, (last visited May 7, 2015).

fishing, fishing-related industries, low-end garment production, factories, and domestic work; some victims are forced to beg on the streets."[28]   That same TIP Report continues by stating:

> [an] assessment of the cumulative risk of labor trafficking among Burmese migrant workers in the seafood industry in Samut Sakhon found that 57 percent of the 430 workers surveyed experienced conditions of forced labor. As fishing is an unregulated industry region-wide, fishermen typically do not have written employment contracts with their employers. Reports during the year indicate this form of forced labor continues to be prevalent, and that increasing international scrutiny has led traffickers to use new methods, making their crimes more difficult to detect. Men from Thailand, Burma, and Cambodia are forced to work on Thai-flagged fishing boats in Thai and international waters and were rescued from countries including Malaysia, Indonesia, Vietnam, and Timor-Leste. The number of Cambodian victims rescued from Thai fishing vessels in countries around the world more than doubled in 2013. Cambodian and Burmese workers are increasingly unwilling to work in the Thai fishing industry due to dangerous and exploitative work conditions which make them more vulnerable to trafficking.

*Id.* at 373.

95.   In June 2014, the U.S. State Department Trafficking in Persons (TIP) Report downgraded Thailand to Tier 3.[29]  *Id.* at 372.



(Source: Environmental Justice Foundation's documentary **"**Sold to the Sea: Human Trafficking in Thailand's Fishing Industry)

---

[28] *Id.*
[29] US demotes Thailand and Qatar for abysmal human trafficking record, available at http://www.theguardian.com/global-development/2014/jun/20/thailand-qatar-downgraded-human-trafficking-report (last visited June 10, 2015).

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

96.     In contrast, Tier 1 is designated for "[c]ountries whose governments fully comply with the Trafficking Victims Protection Act's (TVPA) minimum standards." *Id*. at. 57.  Tier 2 is for "[c]ountries whose governments do not fully comply with the TVPA's minimum standards, but are making significant efforts to bring themselves into compliance with those standards"  and (1) the number of victims of severe forms of trafficking is significant, (2) there is a failure to provide evidence of increasing efforts to combat these severe forms of trafficking, or (3) the U.S. has determined that the country will be making significant efforts to bring itself into compliance over the next year.  *Id*.

97.     Countries who receive a Tier 3 ranking "do not fully comply with the minimum standards and are not making significant efforts to do so."  *Id*.

98.     Further, according to the 2014 TIP Report:

[t]he Government of Thailand does not fully comply with the minimum standards for the elimination of trafficking.  In the 2012 and 2013 *TIP Reports*, Thailand was granted consecutive waivers from an otherwise required downgrade to Tier 3 on the basis of a written plan to bring itself into compliance with the minimum standards for the elimination of trafficking. The Trafficking Victims Protection Act (TVPA) authorizes a maximum of two consecutive waivers. A waiver is no longer available to Thailand, which is therefore deemed not to be making significant efforts to comply with the minimum standards and is placed on Tier 3.

2014 TIP Report, at 373.

99.     This year, on or about July 27, 2015 the State Department publically released its 2015 Report in which Thailand remains out of compliance with minimum standards and therefore re-designated with a Tier 3 ranking.

100.     In the Introduction of the 2015 TIP report, Secretary of State John Kerry singled out the "enslavement of fishermen in Southeast Asia" and how the fisherman are being robbed of the most basic human rights.

101.     Further, the 2015 TIP stated that, although human trafficking is found in many trades, "the risk is more pronounced in industries that rely upon low-skilled or unskilled labor. This includes jobs that are dirty, dangerous, and difficult—those that are typically low-paying and undervalued by society and are often filled by socially marginalized groups including migrants,

1  people with disabilities, or minorities."

2      102.    The 2015 TIP Report also states, unequivocally, that there remains insufficient

3  efforts to combat slavery and human trafficking, with special attention to the subject of this

4  complaint—thousands of migratory workers in the Thai seafood industry being victimized over

5  and over, by not just the trafficking brokers, but also complicit government officials who turn a

6  blind eye in the name of profit.

7      103.    The 2015 TIP Report also explains that undocumented migrant workers are

8  particularly vulnerable to trafficking because of their undocumented status, language constraints,

9  economic pressures, and lack of information.

10      104.    Forced labor takes many forms.  One common form is "debt bondage," which

11  involves a system of contractors that take cuts from the wages of forced laborers.  Under this

12  system, it may be years before a worker begins receiving any income.

13      105.    In this instance, trafficking brokers in and around Thailand engage in deceptive

14  practices, such as withholding documents, including travel documents or passports, migrant

15  registration cards, and work permits.

16      106.    The brokers will withhold these documents and force the workers to pay off their

17  recruitment fees before they are paid wages.  Brokers also contract with pirate ship owners to

18  have them withhold wages from workers.

19      107.    The Burmese, Cambodian, and Thai workers who were trafficked onto Thai

20  fishing boats travel through Indonesia, Southeast Asia and beyond.  The 2015 Report verifies

21  what the non-governmental organizations have reported through their lengthy on the ground

22  investigations—that seafood workers can remain at sea for up to several years.

23      108.    Laborers work shifts of up to 20 hours at a time with no pay for seven days a week.

24  Laborers are kept in chains.

25      109.    Laborers endure physical assaults, public executions, and torture that often result

26  in death.  Workers are forced to survive on these boats in small living quarters and face shortages

27  of clean drinking water.

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**CLASS ACTION COMPLAINT**                                                                                       30

1
2
3
4
5
6
7
8
9
10
11



(Source: AP Documentary - US Supply Chain Tainted By Slave Caught Shrimp)

12
13
14
15
16
17
18
19
20
21
22
23



(Source: AP Documentary - US Supply Chain Tainted By Slave Caught Shrimp)

24
25
26
27
28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP



(Source: Environmental Justice Foundation)

110.     In a report released this year, the labor rights NGO *Verité* analyzed the risk of human trafficking in federal and corporate supply chains.[30]  The report examines a range of sector-specific risk factors, as well as social, economic, and political risk factors in countries of production or service delivery and in those that supply the labor.  Eleven sectors were found to be the most likely to have a risk of human trafficking globally, including the fishing and aquaculture sector.

111.     As all of these sources explain, in and around Thailand, the owners of the Thai flagged fishing boats on which these forced laborers work, sell their catch to factories that grind the fish and other sea creatures to create fishmeal.

112.     Fishmeal suppliers sell the fishmeal to companies such as CP Foods.  CP Foods feeds the fishmeal to farm raised prawns.  It takes about 1.4 pounds of fishmeal to produce one pound of prawns.

---

[30] http://www.verite.org/

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

B.     **Definitions of Slavery, Forced Labor and Trafficking**

113.    The United Nations International Labor Organization found that, globally, almost 21 million people are victims of forced labor – 11.4 million women and girls and 9.5 million men and boys.[31]

114.    Forced labor is defined by the ILO as " situations in which persons are coerced to work through the use of violence or intimidation, or by more subtle means such as accumulated debt, retention of identity papers or threats of denunciation to immigration authorities."

115.    The U.S. Government and the California Legislature define human trafficking as "the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."  22 U.S.C. § 7102(9) (2012); Cal. Penal Code §236.1(g).

116.    International Labor Organization Forced Labor Convention (No. 29) of 1930 defines forced labor as "all work or service that is exacted from any person under the menace of any penalty for which the said person has not offered himself voluntarily."

117.    The Universal Declaration of Human Rights, 1948, says: "no one shall be held in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms."

118.    The Supplementary Convention on the Abolition of Slavery, The Slave Trade, and Institutions and Practices Similar to Slavery, 1956, lists modern forms of slavery: "debt bondage, serfdom, forced marriage and the delivery of a child for the exploitation of that child are all slavery like practices and require criminalization and abolishment."

119.    The Defendants' food supply uses slave labor, bonded labor forced labor and human trafficking  under any accepted definition.

120.    Bonded labor affects millions of people around the world, with biggest numbers in Asia.  People become bonded laborers by taking, or being tricked into taking, a loan for which they are unable to ever pay off.  Some bonded laborers receive basic food and shelter as

---

[31] ILO, Forced Labour, Human Trafficking and Slavery, http://www.ilo.org/global/topics/forced-labour/lang--en/index.htm, (last visited May 4, 2015).

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

payment for their work, but due to penalties and exorbitant interest rates, no matter how hard they work they are never able to pay off the loan.

### C. California Consumers Require Accurate Information About Supply Chains

121.    As acknowledged by the California Attorney General:

> In recent years, California consumers have demanded that producers provide greater transparency about goods brought to market. Consumers utilize this additional information to drive their purchasing decisions, and various indicators suggest that Californians are not alone. A recent survey of western consumers revealed that people would be willing to pay extra for products they could identify as being made under good working conditions.[32]

*The California Transparency in Supply Chains Act: A Resource Guide*, 2015, Kamala D. Harris, Attorney General California Department of Justice, pg. i.[33]

122.    In response to consumer demands, the California Legislature passed the California Transparency in Supply Chains Act of 2010 (the "Act"), Cal. Civ. Code §1714.43. The Act addresses the market for goods and products "tainted" by slavery and human trafficking—crimes that are outlawed by state, federal, and international law.  *Id.*  In enacting the California Transparency Act, the Legislative Counsel's Digest stated that, "consumers…are inadvertently promoting and sanctioning these crimes through the purchase of goods and products that have been tainted in the supply chain."  *See* Legis. Counsel's Dig., Sen. Bill 556, ch. 556, §2(h), (2010 Reg. Sess.).

123.    The Legislature further stated that:

> [a]bsent publically available disclosures, consumers are at a disadvantage in being able to distinguish companies on the merits of their efforts to supply products free from the taint of slavery and trafficking.  Consumers are at a disadvantage in being able to force the eradication of slavery and trafficking by way of their purchasing decisions.

*Id.* at § 2(i).  The Act recognizes that consumers are deeply concerned about the way in which

---

[32] A 2005 study revealed that consumers are willing to spend, at minimum, 10-20% above market price for products that were certified as being "made under fair labor conditions, in a safe and healthy working environment which is free of discrimination, and where management has committed to respecting the rights and dignity of workers."  This study shows that consumers are willing to spend more on products when there is a credible certification that the products were made with higher labor standards in mind.  *See* Michael J. Hiscox and Nicholas F. B. Smyth, *Is There Consumer Demand for Improved Labor Standards? Evidence from Field Experiments in Social Product Labeling*, (2011), http://scholar.harvard.edu/files/hiscox/files/consumerdemandfairlaborstandardsevidencesocial.pdf (last viewed May 5, 2015)

[33] Available at http://oag.ca.gov/sites/all/files/agweb/pdfs/sb657/resource-guide.pdf, last viewed May 4, 2015.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

their products are made and would alter their purchasing practices if they knew their products were tainted by slavery and human trafficking. The Act, therefore, requires businesses with an annual gross of over $100 million to "disclose their efforts to eradicate slavery and human trafficking from their direct supply chains." *See* Cal. Civ. Code §1714.43(a)(1).

124. A survey by FishWise, a non-profit marine conservation organization, further explains the depths of consumer concerns regarding human rights abuses in supply chains. FishWise surveyed consumers, the seafood industry and non-governmental organizations.[34] The survey revealed that most consumers are "unsure" if there are human rights problems in seafood supply chains.[35] Despite this uncertainty, 88% of consumers stated that they would stop buying a product if it was associated with human rights abuses.[36] The survey further revealed that 70% percent of consumers would pay more for a product certified to be free of human rights abuses.[37] FishWise noted that, "survey results indicate that human rights are important to seafood consumers and many of them are willing to avoid high risk products and pay more for those that are certified to be free of abuses."[38] A graphic representation of this survey appears below:



---

[34] FishWise, *Trafficked II: An updated summary of human rights abuses in the seafood industry* (2014), pg 5, http://www.fishwise.org/services/human-rights, (last viewed May 5, 2015).
[35] *Id.*
[36] *Id.* at 6.
[37] *Id.*
[38] *Id.* at 7.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

### D. International Response to Forced Labor in Thailand

125. The government in Thailand is aware that human trafficking is a systematic, deep rooted problem.

126. The government in Thailand is also aware of the enslavement of hundreds of thousands of individuals and has repeatedly made public statements that it would "crack down" on this practice.[39]  However, although the Thailand government says that combating human trafficking is a national priority, the commercial fishing industry remains infiltrated by Thai organized crime.  This is verified in the 2015 TIP Report from the U.S. State Department.

127. The Thai government fears that investigating and punishing traffickers, allowing real audits, and creating mechanisms to reduce labor exploitation would raise the cost of prawns and reduce sales of prawns to large consumers in the United States, such as Costco.  As Thailand profits substantially from the continued use of all forms of human trafficking, there is little economic, political incentive for the government to ensure legal employment and a fair wage.

128. In 2008, Thailand passed the Anti-Trafficking in Persons Act, which criminalized all forms of human trafficking.

129. Although Thailand has enacted domestic laws designed to protect labor rights in response to international pressure, these laws remains largely ineffective and ignored.

130. These laws contain procedural gaps that inhibit actual preventative, protective, or punitive anti-trafficking methods.

131. Further, as the numerous reports all advise, and the 2015 TIP Report confirms, enforcement methods have been sporadic at best and failed to meet minimum standards.  The number of investigations, arrests, prosecutions, and convictions of traffickers have been insufficient to effectively eliminate trafficking and to deter traffickers.

132. Available data shows that in 2012, the Royal Thai Police obtained only ten convictions in four trafficking-related cases.

---

[39] Thai PM vows to fight human trafficking in sex trade, fishing industry, http://www.trust.org/item/20141229120241-qyxjg/?source=jtOtherNews1 (last visited July 10, 2015); *see also*, SPECIAL REPORT: Inside Thailand's trafficking crackdown, http://www.trust.org/item/20150709100124-xefex/?source=search (last visited July 10, 2015).

133.    Further, despite the military's promises of "zero tolerance" after the June 2014 downgrade in the TIP Report to Tier 3,  Thailand convicted fewer perpetrators of human trafficking last year than in 2013, according to the government's own anti-trafficking report.  This trend continued as stated in the 2015 TIP Report.

134.    Labor trafficking also often goes unreported by migrant victims because of fear of corruption among authorities.

135.    In short, the Thai fishing industry is a modern day Wild West, with rampant lawlessness.

**E.    National Response to Slavery and Human Trafficking**

136.    Combating slavery and human trafficking has been of paramount importance for the United States.  The U.S. has become increasingly aware of slavery and human trafficking in the supply chain and has explored ways to combat these human rights abuses.  As of 2014, the U.S. Bureau of International Labor Affairs has confirmed that the shrimp in Thailand is produced by both child and forced labor.

| Country | Good | Child Labor | Forced Labor |
|---------|------|-------------|--------------|
| Bangladesh | Shrimp | X | |
| Burma | Shrimp | | X |
| Cambodia | Shrimp | X | |
| Thailand | Shrimp | X | X |

(Source: U.S. Bureau of International Labor Affairs – List of Goods Produced by Child Labor or Forced Labor)

137.    In the 2014 Trafficking in Persons Report (TIP), Secretary Kerry penned a letter to readers that emphasized the United States' commitment to addressing human trafficking and "modern slavery."[40]  *See* U.S. State Dept., Trafficking in Persons Report, June 2014.  Secretary Kerry wrote that the United States "**find[s] perhaps no greater assault on basic**

---

[40] U.S. State Dept., Trafficking in Persons Report: June 2014, available at http://www.state.gov/j/tip/rls/tiprpt/2014/?utm_source=NEW+RESOURCE:+Trafficking+in+Persons+R, (last visited May 7, 2015).

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**freedom than the evil of human trafficking**.  *Id.*  Secretary Kerry stated that this tenet holds

true:

> whether it comes in the form of a young girl trapped in a brothel, a woman enslaved as a domestic worker, a boy forced to sell himself on the street, **or a man abused on a fishing boat**, the victims of this crime have been robbed of the right to lead the lives they choose for themselves, and **trafficking and its consequences have a spill-over effect that touches every element of a society**.

*Id.* (emphasis added).

### 1.    United States' Response to Modern Slave Labor

138.    In response to the growing concern about slave labor within the supply chains, the United States enacted the Tariff Act Section 307 of the Tariff Act of 1930, 19 U.S.C. §1307, prohibits importing goods made with forced or indentured labor.

139.    In 2000, to expand on sanctions against traffickers and to protect trafficking victims, the U.S. enacted the Victims of Trafficking and Violent Protection Act of 2000. According to the TVPA of 2000:

> Congress finds that [a]s the 21st century begins, the degrading institution of slavery continues throughout the world.  Trafficking in persons is a modern form of slavery, and it is the largest manifestation of slavery today.

*See* 22 U.S.C. § 7101(b)(1).

140.    After analyzing slavery and human trafficking in the supply chain, the TVPA of 2000 stated that "[t]rafficking in persons substantially affects interstate and foreign commerce. Trafficking for such purposes as involuntary servitude, peonage, and other forms of forced labor has an impact on the nationwide employment network and labor market."  *Id.* at § 7101 (b)(12). This Act, among other provisions, strengthened sanctions against traffickers, established an Office and Interagency Task Force to Monitor and Combat Trafficking and provided assistance to victims of trafficking by allowing them to seek "T-Visas" to obtain temporary residency in the United States.

141.    In 2003, the U.S. enacted the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA of 2003").  The TVPRA of 2003 amended the TVPA of 2000 and, among other things, enhanced the prevention of trafficking in persons, added additional provisions to protect families of trafficked victims, added human trafficking to crimes that can be charged

under the RICO statutes, and established a civil right of action for trafficking victims.  The United States continues to address the evolving issues of human trafficking, the TVPA of 2000 by further amended in 2005, 2008, and 2013.

142.    Specifically, in 2005, the U.S. enacted the Trafficking Victims Protection Reauthorization Act of 2005 ("TVPRA of 2005").  The TVPRA of 2005 further amended the TVPA of 2000 and enhanced the protections for trafficked victims and includes measures to ensure that the U.S. Government personnel and contractors are held accountable for their involvement with acts of trafficking in persons.

143.    Following this amendment, the U.S. Department of Defense incorporated anti-trafficking and protection measures for vulnerable populations.  Additionally, a $5 million pilot program was established to create residential treatment facilities in foreign countries for victims of trafficking.

144.    In 2008, the U.S. enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA of 2008").

145.    The TVPRA of 2008 was enacted to "authorize appropriations for fiscal years 2008 through 2011 for the Trafficking Victims Protection Act of 2000, to enhance measures to combat trafficking in persons, and for other purposes."

146.    The TVPRA of 2008 amended the TVPA of 2000 to include new prevention strategies to combat international trafficking in persons, to ensure the availability of possible witnesses and informants, enhance the sanctions against traffickers, and more.

147.    In 2013, The Trafficking Victims Protection Reauthorization Act of 2013 ("TVPRA of 2013") was passed to, among other improvements, strengthen efforts to "ensure that United States citizens do not use any item, product, or material produced or extracted with use of labor from victims of severe forms of trafficking."

148.    As evidenced throughout these federal statutes, the United States is deeply concerned with national and international human rights abuses and seeks to eradicate these abuses by enacting programs, criminal sanctions, and protections for victims of trafficking.  In doing so, the U.S. also sought to prevent consumers from unconsciously sanctioning these human rights

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

violations through their unwitting purchases of tainted supply lines for consumer goods.

2.    **California Statutes to Combat Slavery and Human Trafficking**

149.    California has also enacted a statute to ensure that consumers did not involuntarily sanction slavery and human trafficking.

150.    The California Transparency in Supply Chain Act ("the Act"), Cal. Civ. Code § 1714.43, was signed into law in October 2010.  The Act addresses the market for goods and products "tainted" by slavery and human trafficking—crimes that are outlawed by state, federal, and international law.  *Id.*  This statute recognizes that consumers should not be forced to promote slavery and human trafficking through their purchasing practices.  Therefore, businesses such as Costco are required to "disclose their efforts to eradicate slavery and human trafficking from their direct supply chains."  *Id.* at § 1714.43(a)(1).

151.    Such disclosure should include a statement that addresses the extent that the company:  (1) engages in verification of product supply chains to evaluate human trafficking and slavery, (2) conducts audits of suppliers to evaluate supplier compliance with company standards for trafficking and slavery in supply chains, (3) requires direct suppliers to certify that materials incorporated into the product comply with the laws regarding slavery and human trafficking in the country or countries in which they are doing business, (4) maintained internal accountability standards, and (5) provides company employees and management, who have direct responsibility for supply chain management, training on human trafficking and slavery.  Cal. Civ. Code § 1714.43, *et seq.*

152.    Costco states publically that it does not tolerate human trafficking and slavery in its supply chain yet it continues to sell unregulated, tainted prawns to consumers.

153.    California has also enacted several statutes that directly address human trafficking abuses such as The California Trafficking Victims Protection Act, The Human Trafficking Collaboration and Training Act, the Access to Benefits for Human Trafficking and Other Serious

1    Crime Victims Act as well as various Senate and Assembly Bills that amend current California

2    statutes.[41]

3        F.    **Defendants' Participation is Critical to the Tainted Products Reaching**
              **California Consumers**
4

5        154.   Costco sells prawns to U.S. customers in its retail stores and warehouse stores,

6    which has been farmed by companies such as CP Foods, that are known to use slavery to derive

7    fish meal. U.S. consumers who buy farmed prawns from Thailand are buying the product that was

8    created through the use of forced labor, chattel labor, and/or slave labor.  Costco is able to obtain

9    an ongoing, cheap supply of farmed prawns by maintaining supplier/buy or relationships with

10   distributors such as CP Foods and other entities in the supply chain.  These relationships are

11   maintained in the form of contracts, agreements, and/or memorandums of understanding, both

12   written and oral.    Costco, as one of the largest companies in the world, can dictate the terms by

13   which prawns are produced and supplied to it.  This includes the labor conditions in the supply

14   chain.

15       157.   Despite the well-documented use of forced labor on trash fish boats in Thailand,

16   Costco purchases prawns from CP Foods and other entities that it knew, or should have known,

17   relied upon forced labor to farm their product.  Because of their economic power in the region

18   and their supplier/buyer agreements, Costco and CP Foods have the ability to control the labor

19   conditions on prawns boats and to end the use of slave labor.  Despite Costco's knowledge of the

20   widespread use of forced labor on the prawns boats from which they source and the specific

21   policies prohibiting forced labor, Costco continues to purchase prawns from these entities.

22       158.   Defendant received benefits by being able to purchase prawns from distributors at

23   significantly lower prices as a result of the forced labor practices utilized by so called "ghost

24   ships" from which Defendant sourced their prawns.  The illicit boat owners' total labor costs

25   were greatly diminished by reliance on forced labor.

26       159.   To the extent any agent, employee, co-conspirator, and/or partner used and/or

27   facilitated the use of forced labor, such entity was acting within the course and scope of such

28   _____
     [41] For a full list, please visit the website of State of California Department of Justice - Office of the Attorney General,
     https://oag.ca.gov/human-trafficking/legislation (last visited May 7, 2015).

agency, enterprise, or conspiracy and Defendants confirmed and ratified such conduct.

### G.    CP Foods' Admissions Regarding the Abuses in the Supply Chain

160.    For at least the last four (4) years, major media and non-governmental organizations around the world have been reporting on human rights abuses arising from farming of prawns.  Along with other illegal fishing activity, forced labor is widespread and thus undisputedly within the knowledge of the buyers in the United States.

161.    CP Foods admits that slave labor is part of its supply chain.  As quoted in the *Guardian:*

> "We're not here to defend what is going on," said Bob Miller, CP Foods' UK managing director. "We know there's issues with regard to the [raw] material that comes in [to port], but to what extent that is, we just don't have visibility."

162.    "We'd like to solve the problem of Thailand because there's no doubt commercial interests have created much of this problem," admits CP Foods' Miller.[42]

163.    Costco is purchasing and reselling farmed prawns from CP Foods and other companies that directly arise from illegal activity.  Costco is aware that this prawns is the product of slave labor.

164.    Costco could remedy this situation by enforcing its supplier standards, which prohibit slave labor and human trafficking.

## VI.    CLASS AND REPRESENTATIVE ALLEGATIONS

165.    Plaintiff brings this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following Class  (the "Class"):

> All persons and entities residing in California that, from at least 2011, through the present purchased frozen (or previously frozen) Thai farmed prawn products in the United States from Costco Wholesale Corporation.

166.    The total number of Class members is so large that individual joinder of all members of the Class is impracticable.  There are millions of purchasers of farmed prawns in California.  The claims of individual class members are too small to justify an individual action, and a class action is superior to other methods for the fair and efficient adjudication of this

---

[42] Guardian: Trafficked into slavery on Thai trawlers to catch food for prawns, http://www.theguardian.com/global-development/2014/jun/10/-sp-migrant-workers-new-life-enslaved-thai-fishing (last visited August 8, 2015).

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

controversy.

167.   Plaintiff's claims are typical of the claims of the members of the Class, since Plaintiff and all members of the Class purchased prawns during the class period alleged herein, their claims arise from the same course of conduct, and the relief sought is common.

168.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class as its interests are typical of the rest of the Class and it has no conflict with other Class Members.  Plaintiff has retained experienced and competent counsel.

169.   Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  Whether business acts and practices, as alleged herein, constituted and constitute a continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of §17200;

(b)  Whether Plaintiff and each member of the Class are entitled to relief, including full restitution of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business acts or practices; and

(c)  As a result of the above violations of Business and Professions Code Section 17200, Plaintiff are entitled to an order enjoining such conduct by Defendant, and such orders and judgments that may be necessary, including the appointment of a receiver, to restore to any person in interest any money paid as a result of the acts of Defendant.

/ / /

# VII.    CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Unlawful Business Acts and Practices**
**California Business & Professions Code § 17200,** *et seq***.**
**(Against Costco, Charoen Pokphand Foods Public Company Limited and C.P. Food Products, Inc.)**

170.    Plaintiff hereby incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

171.    Such acts of the Defendants as described above, constitute unlawful business practices within the meaning of California Business and Professions Code § 17200.

172.    Defendants' business acts and practices, as alleged herein, constituted and constitute a continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of § 17200.

173.    Defendants' practices are unlawful in that their conduct in sourcing and selling farmed prawns actively contributes to the use of slave labor in violation of bans on such human trafficking enacted by the U.S., California and by international conventions, including but not limited to the Tariff Act of 1930.  The Anti-Trafficking in Persons Act, the UN Declaration of Human Rights, and California Penal Code § 236, § 237, *et seq*. In addition, Defendant Costco's conduct in representing that it enforces policies against the use of slave labor in the farming of the prawns it sells is a violation of Civil Code Section 1714.43.  Costco's practices are also unlawful under California Business and Professions Code Section 17500, *et seq*. and Civil Code Section 1750, *et seq*.

174.    Defendants' practices are fraudulent in that Defendant Costco affirmatively represents that it enforces its standards to prohibit the use of slave labor and it fails to identify the fact that the frozen Thai prawns it is selling is produced using slave labor.  Both Defendants are aware of the use of the slave labor and know that consumers are concerned about the source of the prawns but both Defendants refuse to identify their underlying sources other than identifying the country of origin.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

175. Defendants' practices are unfair in so far as their behavior offends established public policy against the use of slave labor and the sale of products tainted by the use of slave labor, and against the production, distribution and sale of products produced under inhumane conditions.

176. Defendants' participation in a supply chain tainted with slave labor is immoral, unethical, oppressive, unscrupulous and injurious to consumers.

177. Defendants' practices are also unfair in that the benefit – lower prices for prawns —are completely outweighed by the costs – slave labor.

178. Defendants' business acts and practices, as alleged herein, have caused harm to Plaintiff and each member of the Class.

179. Plaintiff and each member of the Class are entitled to relief, including full restitution.

180. As a result of the above violations of Business and Professions Code Section 17200, Plaintiff is entitled to an order enjoining such conduct by Defendants, such orders and judgments that may be necessary, including the appointment of a receiver, to restore to any person in interest any money paid as a result of the acts of Defendants.

181. Plaintiff seeks to enjoin Defendants' illegal practices tied to the supply chain for Thai frozen farmed prawns, including:

- An injunction against the non-disclosure of Defendants' tainted food supply chain, including but not limited to the further sale of frozen farmed prawns in its current packaging; and

- An injunction prohibiting the Defendants from selling misleading, or inadequately labelled prawns that fail to notify the consumer of the conditions described herein; and

- An injunction prohibiting against Defendants' continued buying, distributing, and selling products that they know, should know, or suspect to be tainted by slave labor or human trafficking.

182.    Plaintiff is entitled to an award of reasonable attorneys' fees under California Code of Civil Procedure Section 1021.5 for the benefit conferred upon the general public of the State of California by any injunctive or other relief entered herein.

### SECOND CLAIM FOR RELIEF

**Misleading and Deceptive Advertising**
**California Business and Professions Code Section 17500, *et seq*.**
**(As To Defendant Costco)**

183.    Plaintiff repeats and realleges each of the allegations contained in the preceding and subsequent paragraphs, and incorporates the same as though fully set forth hereinafter.

184.    California Business and Professions Code Section 17500 provides that it is unlawful for a corporation "to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ..."

185.    Defendant's representations, including statements made in Defendant's television, radio, and print advertising, websites, brochures, and all other written and oral materials disseminated by Defendant contained statements that were false, misleading, or that omitted material information that Defendant were under a duty to disclose and which were known or should have been known to Defendant to be false, misleading or deceptive.

186.    The misleading advertising described herein presents a continuing threat to Plaintiff and members of the public in that Defendant persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

187.    As a direct and proximate result of Defendant's misconduct and omissions, Plaintiff sustained the damages herein set forth.  Plaintiff is therefore entitled to injunction and restitution according to proof at trial.

188.     As a result of the above violations of Business and Professions Code Section 17500, Plaintiff is entitled to an order enjoining such conduct by Defendant, and such orders and judgments that may be necessary, including the appointment of a receiver, to restore to any person in interest any money paid as a result of the acts of Defendant.

189.     Plaintiff seeks to enjoin Defendants' illegal practices tied to the supply chain for Thai frozen farmed prawns, including:

> • An injunction against the non-disclosure of Defendants' tainted food supply chain, including but not limited to the further sale of frozen farmed prawns in its current packaging; and

> • An injunction prohibiting the Defendants from selling misleading, or inadequately labelled prawns that fail to notify the consumer of the conditions described herein; and

> • An injunction prohibiting against Defendants' continued buying, distributing, and selling products that they know, should know, or suspect to be tainted by slave labor or human trafficking.

190.     Plaintiff is entitled to an award of reasonable attorneys' fees under California Code of Civil Procedure Section 1021.5 for the benefit conferred upon the general public of the State of California by any injunctive or other relief entered herein.

## THIRD CLAIM FOR RELIEF

**Consumer Legal Remedies Act, Civil Code Section 1750, *et seq.***
**(As To Defendant Costco)**

191.     Plaintiff realleges and incorporates by reference each of the allegations set forth above on behalf of the Class.

192.     The above acts of Defendant Costco, in selling prawns that are the product of slave labor, were and are unfair methods of competition and unfair or deceptive acts and practices in violation of the Consumer Legal Remedies Act, Civil Code Section 1750, *et seq*. ("CLRA").

193.     CLRA section 1770(a)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant violated this provision by making the misrepresentations describe above, including but not limited to, in connection with its Code of Conduct and in selling misleading and inadequately labeled prawns that fail to notify the consumer of unlawful labor abuses in the supply chain.  Defendant continues to violate this provision in connection with sales of prawns to Class members.

194.    CLRA section 1770(a)(7) prohibits "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendant violated this provision by making the misrepresentations describe above, including but not limited to, in connection with its Code of Conduct and in selling misleading and inadequately labeled prawns that fail to notify the consumer of unlawful labor abuses in the supply chain.  Defendant continues to violate this provision in connection with sales of prawns to Class members.

195.    CLRA section 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."  Defendant violated this provision by making the misrepresentations describe above, including but not limited to, in connection with its Code of Conduct and in selling misleading and inadequately labeled prawns that fail to notify the consumer of unlawful labor abuses in the supply chain.  Defendant continues to violate this provision in connection with sales of prawns to Class members.

196.    CLRA section 1770(a)(16) prohibits "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

197.    The violations of the CLRA have caused pecuniary loss to Plaintiff and the alleged Class.

198.    As a result of the above violations of Business and Professions Code Section 17500, Plaintiff and the Class are entitled to an order of this Court enjoining such future conduct on the part of Defendant, and such other orders and judgments which may be necessary, including the appointment of a receiver, to restore to any person in interest any money paid as a result of the acts of Defendant.

199.    Plaintiff seeks to enjoin Defendants' illegal practices tied to the supply chain for Thai frozen farmed prawns, including:

- An injunction against the non-disclosure of Defendants' tainted food supply chain, including but not limited to the further sale of frozen farmed prawns in its current packaging; and

- An injunction prohibiting the Defendants from selling misleading, or inadequately labelled prawns that fail to notify the consumer of the conditions described herein; and

- An injunction prohibiting against Defendants' continued buying, distributing, and selling products that they know, should know, or suspect to be tainted by slave labor or human trafficking.

200.    Plaintiff is entitled to an award of reasonable attorneys' fees under California's Consumer Legal Remedies Act.

## VIII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief as follows:

a.    For certification of this action as a class action;

b.    For injunctive relief;

c.    For restitution and such other equitable relief as may be appropriate under California Law;

d.    For costs of suit and an award of reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5, Consumer Legal Remedies Act, and any other applicable law; and

e.    For such other and further relief as the Court may deem just and proper.

/ / /

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Dated:  August 19, 2015          **COTCHETT, PITRE & McCARTHY, LLP**

                                 By: ___/s/ *Niall P. McCarthy*_____
                                     NIALL P. McCARTHY
                                     ANNE MARIE MURPHY
                                     SHAUNA R. MADISON


                                 **HOWARD LAW FIRM**
                                     DEREK HOWARD


                                 **JENKINS MULLIGAN & GABRIEL LLP**

                                     DANIEL J.  MULLIGAN


## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.


Dated:  August 19, 2015          **COTCHETT, PITRE & McCARTHY, LLP**

                                 By: ___/s/ *Niall P. McCarthy*_____
                                     NIALL P. McCARTHY
                                     ANNE MARIE MURPHY
                                     SHAUNA R. MADISON


                                 **HOWARD LAW FIRM**
                                     DEREK HOWARD

                                 **JENKINS MULLIGAN & GABRIEL LLP**

                                     DANIEL J.  MULLIGAN

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**CLASS ACTION COMPLAINT**                                    50

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices
Cotchett, Pitre
& McCarthy, LLP