Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@JonesDay.com
Craig E. Stewart (State Bar No. 129530)
cestewart@JonesDay.com
Caroline N. Mitchell (State Bar No. 143124)
cnmitchell@JonesDay.com
David L. Wallach (State Bar No. 233432)
dwallach@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    415.626.3939
Facsimile:    415.875.5700

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MONICA SUD, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington Corporation; CHAROEN POKPHAND FOODS PLC, a Bangkok. Thailand Corporation; C.P. FOOD PRODUCTS, INC., a Maryland Corporation,<br><br>Defendants. | **Case No. 15-cv-03783 JSW**<br><br>**DEFENDANT COSTCO WHOLESALE CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:    April 29, 2016<br>Time:    9:00 a.m.<br>Place:    Courtroom 5 |

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................................v

NOTICE OF MOTION ......................................................................................................................1

RELIEF REQUESTED ......................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

INTRODUCTION ...............................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .............................................................................3

BACKGROUND ..................................................................................................................................3

ARGUMENT ........................................................................................................................................4

I.     THE COMPLAINT DOES NOT ALLEGE A VALID NONDISCLOSURE OR
       MISREPRESENTATION CLAIM UNDER THE UCL, CLRA, OR FAL. ..........................4

       A.     Costco Did Not Engage in any Fraudulent or Deceptive Business Practice or
              Advertising. ........................................................................................................................4

              1.     Costco Does Not Have a Duty to Disclose Publicly Available
                     Allegations Regarding the Thai Fishing Industry. ...............................................4

                     (a)     California Limits a Sellers' Duty to Disclose in These
                             Circumstances to Safety Issues. ...................................................................4

                     (b)     Costco Did Not Have Exclusive Knowledge of the Allegedly
                             Nondisclosed Facts. .........................................................................................6

              2.     Costco Did Not Make Any False or Misleading Statements. ..............................7

       B.     Plaintiffs' CLRA Claim Also Fails. ...............................................................................8

       C.     The FAL Does Not Apply to Alleged Omissions. .......................................................9

II.    COSTCO DID NOT ENGAGE IN ANY UNFAIR BUSINESS PRACTICE. ......................9

III.   PLAINTIFFS' CLAIM IS BARRED BY THE SAFE HARBOR DOCTRINE. .................11

IV.    COSTCO DID NOT ENGAGE IN ANY UNLAWFUL BUSINESS PRACTICE...............13

V.     PLAINTIFFS DO NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF...............15

CONCLUSION....................................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 4

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ......................................................................... 8

*Barber v. Nestle USA, Inc.*,
2015 WL 9309553 (C.D. Cal. Dec. 9, 2015) ........................................................ passim

*Camacho v. Automobile Club of S. Cal.*,
142 Cal. App. 4th 1394 (2006) ................................................................................... 10

*Cel-Tech Comm'ns Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .......................................................................................... 10, 11

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ....................................................................................... 7

*Foronda v. Wells Fargo Home Mortg., Inc.*,
2014 WL 6706815 (N.D. Cal. Nov. 26, 2014)........................................................... 12

*Graham v. Bank of America, N.A.*,
226 Cal. App. 4th 594 (2014) ..................................................................................... 10

*Gray v. Toyota Motor Sales, U.S.A.*,
2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ................................................................ 7

*Hall v. Sea World Entm't, Inc.*,
2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)....................................................... passim

*Hilton v. Apple Inc.*,
2014 WL 10435005 (C.D. Cal. April 18, 2014) ........................................................ 14

*Hodges v. Apple Inc.*,
2013 WL 4393545 (N.D. Cal. Aug. 12, 2013)........................................................... 13

*Hodsdon v. Mars, Inc.*,
2016 WL 627383 (N.D. Cal. Feb. 17, 2016) ........................................................ passim

*Hughes v. Big Heart Pet Brands*,
2016 WL 524057 (C.D. Cal. Jan. 15, 2016) ................................................................ 1

*In re Toyota Motor Corp.*,
785 F. Supp. 2d 883 (C.D. Cal. 2011) ....................................................................... 13

*Kowalsky v. Hewlett-Packard Co.*,
771 F. Supp. 2d 1138 (N.D. Cal. 2010) ........................................................................ 4

*McKell v. Washington Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) ................................................................................... 10

*Moose Lodge No. 107 v. Irvis*,
407 U.S. 163 (1972) .................................................................................................... 10

*Morgan v. Wallaby Yogurt Co.*,
2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) ........................................................... 15

*Mugworld, Inc. v. G.G. Marck & Assocs. Inc.*,
563 F. Supp. 2d 659 (E.D. Tex. 2007) ....................................................................... 14

*Nat'l Ass'n of Manufacturers v. S.E.C.*,
800 F.3d 518 (D.C. Cir. 2015) ...................................................................................... 6

*Norcia v. Samsung Telecomm. Am., LLC*,
2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ............................................................. 9

*Ogala v. Chevron Corp.*,
2014 WL 2089901 (N.D. Cal. May 19, 2014) ........................................................... 13

*Olagues v. Marin DA*,
2014 WL 3704918 (N.D. Cal. July 23, 2014) .............................................................. 4

*Perea v. Walgreen Co.*,
939 F. Supp. 2d 1026 (C.D. Cal. 2013) ..................................................................... 14

*Rahman v. Mott's LLP*,
2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ........................................................ v, 15

*Romero v. Flowers Bakeries, LLC*,
2015 WL 2125004 (N.D. Cal. May 6, 2015) ............................................................. 15

*Rosa v. Tri-Union Seafoods, LLC*,
2016 WL 524059 (C.D. Cal. Jan. 15, 2016) ................................................................ 1

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) ....................................................................................... 4

*Smith v. State Farm Mut. Auto. Ins. Co.*,
93 Cal. App. 4th 700 (2001) ...................................................................................... 10

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) ................................................................................................... 13

*Stanwood v. Mary Kay, Inc.*,
941 F. Supp. 2d 1212 (C.D. Cal. 2012) ....................................................................... 6

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ................................................................. 14

*Taragan v. Nissan N. Am., Inc.*,
   2013 WL 3157918 (N.D. Cal. June 20, 2013) .................................. 7

*Walsh v. Kindred Healthcare*,
   798 F. Supp. 2d 1073 (N.D. Cal. 2011) ........................................ 11

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ......................................................... 5

*Wirth v. Mars Inc.*,
   2016 WL 471234(C.D. Cal. Feb. 5, 2016) ............................... passim

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985) ........................................................................ 6

Statutes

15 U.S.C. § 45(n) ............................................................................. 10

19 U.S.C. § 1307 ............................................................................. 14

California Business & Profession Code
   Sections 17200 *et seq.* ..................................................................... 4
   Section 17204 .................................................................................. 14
   Section 17500 .................................................................................... 9
   Sections 17500 *et seq.* ..................................................................... 4

California Civil Code
   Section 1714.43 ........................................................................ passim
   Sections 1750 *et seq.* ...................................................................... 4
   Section 1770(a)(5)) ........................................................................... 8
   Section 1770(a)(7) ............................................................................ 9
   Section 1770(a)(9) ........................................................................ 5, 9
   Section 1770(a)(16) .......................................................................... 9

California Penal Code
   Section 236.1 .................................................................................. 14
   Section 236 ..................................................................................... 14
   Section 237 ..................................................................................... 14
   Section 27 ....................................................................................... 14

Rules

Federal Rules of Civil Procedure
   Rule 12(b)(6) .................................................................................... 1
   Rule 9(b) ...................................................................................... 4, 6

1

**SUMMARY OF ARGUMENT**

2    Plaintiffs assert false advertising and related claims over alleged forced labor in Costco's

3  supply chain for farmed prawns from Southeast Asia.  Plaintiffs' claims are virtually identical to

4  those asserted in several other recent "supply chain" lawsuits.  In those other suits, every court

5  that has ruled on a motion to dismiss has dismissed the case with prejudice for failure to state a

6  claim.  *Barber v. Nestle USA, Inc.*, 2015 WL 9309553 (C.D. Cal. Dec. 9, 2015) (Thai fishing);

7  *Wirth v. Mars Inc.,* 2016 WL 471234 (C.D. Cal. Feb. 5, 2016) (Thai fishing); *Hodsdon v. Mars,*

8  *Inc.*, 2016 WL 627383 (N.D. Cal. Feb. 17, 2016) (chocolate).  This Court should do the same.

9    As the other courts have ruled, Costco did not owe a duty to disclose alleged forced labor

10  by entities several steps removed from Costco down its supply chain.  California law limits the

11  duty to disclose in these circumstances to issues that concern consumer safety—and plaintiffs do

12  not and cannot claim any such issue exists here.  No authority has extended the duty to disclose to

13  the kind of alleged third-party misconduct that plaintiffs assert here.

14    Plaintiffs' claim is also barred by California's safe harbor doctrine.  In the California

15  Transparency in Supply Chains Act (Cal. Civ. Code § 1714.43), the Legislature prescribed the

16  scope of a seller's disclosure duty in this circumstance, and limited that duty to disclosing only

17  the seller's efforts to identify and eradicate slave labor.  By thus prescribing the scope of a

18  company's disclosure duty, "the California Legislature created a safe harbor that bars Plaintiffs'

19  current claims."  *Wirth,* 2016 WL 471234, at *8.

20    Plaintiffs' misrepresentation claim is barred because plaintiffs do not allege (1) that they

21  even saw the alleged misrepresentations, or (2) facts showing that the statements are false or

22  misleading.

23    Costco's sale of farmed prawns is not "unlawful" or "unfair."  Plaintiffs do not identify

24  any statute or public policy prohibiting the sale of allegedly "tainted" prawns.  Nor do they allege

25  facts showing that Costco violated any of the statutes they cite.

26    Plaintiffs lack standing to seek an injunction because they cannot allege any future threat

27  of being deceived.  *Rahman v. Mott's LLP*, 2014 WL 5282106, at *6 (N.D. Cal. Oct. 15, 2014).

28

1

**NOTICE OF MOTION**

2        PLEASE TAKE NOTICE that on April 29, 2016, in the Courtroom of the Honorable

3    Jeffrey S. White of the United States District Court for the Northern District of California,

4    Oakland Division, located at 1301 Clay St., Oakland, California, defendant Costco Wholesale

5    Corporation, Inc. will and hereby does move to dismiss the First Amended Complaint.

6

**RELIEF REQUESTED**

7        Dismissal of the First Amended Complaint for failure to state a claim and dismissal of

8    plaintiffs' injunctive relief claim for lack of standing.

9

**MEMORANDUM OF POINTS AND AUTHORITIES**

10

**INTRODUCTION**

11        This case is one of several cases filed last year asserting false advertising and related

12    claims over alleged slave labor in a company's supply chain.  The theory in each case is that,

13    although the defendant did not itself use any slave labor, the defendant had a duty to disclose that

14    slave labor allegedly existed in the company's supply chain.  Five of the cases, including this one,

15    involve alleged slave labor in the Thai fishing industry.  Three cases alleged forced labor in the

16    supply chain for chocolate products.

17        In each of these cases in which a motion to dismiss has been decided, the court has

18    granted the motion with prejudice.  *Barber v. Nestle USA, Inc.*, 2015 WL 9309553 (C.D. Cal.

19    Dec. 9, 2015) (Thai fishing); *Wirth v. Mars Inc.,* 2016 WL 471234 (C.D. Cal. Feb. 5, 2016) (Thai

20    fishing); *Hodsdon v. Mars, Inc.*, 2016 WL 627383 (N.D. Cal. Feb. 17, 2016) (chocolate).[1]  And

21    another recent decision dismissed with prejudice a similar claim that SeaWorld failed to disclose

22    alleged unhealthy living conditions of its killer whales.  *Hall v. Sea World Entm't, Inc.,* 2015 WL

23

---

24    [1]        On the basis of the ruling in *Barber*, the plaintiffs in two other cases pending in that court
25    agreed that their complaints should also be dismissed.  *Hughes v. Big Heart Pet Brands*, 2016 WL
      524057 (C.D. Cal. Jan. 15, 2016) (Thai fishing); *Rosa v. Tri-Union Seafoods, LLC*, 2016 WL
26    524059 (C.D. Cal. Jan. 15, 2016) (Thai fishing).

27        Motions to dismiss are pending in the two remaining chocolate supply chain cases.
      *McCoy v. Nestle USA, Inc.,* No. 15-cv-04451-JSC (N.D. Cal.); *Dana v. Hershey Co.,* No. 15-cv-
28    04453-JCS (N.D. Cal.).

1    9659911, at *1 (S.D. Cal. Dec. 23, 2015).

2        These decisions have rejected the plaintiffs' claims on two principal grounds, both of

3    which apply here.

4        First, the courts ruled that the defendant owed no duty of disclosure.  California law does

5    not impose a duty on manufacturers to disclose every bit of information about the company or its

6    suppliers that consumers might consider "material" in some sense to their purchase.  The "stun-

7    ning breadth" of any such duty (*Hodsdon,* 2016 WL 627383, at *6) would result in potentially

8    "limitless" liability.  *Hall*, 2015 WL 9659911, at *7.  To prevent such liability, a seller's

9    disclosure duty is limited to issues affecting consumer safety, and certainly does not extend to

10    alleged misconduct by entities several steps removed from the defendant down its supply chain.

11        Second, the courts have ruled that the nondisclosure claim is barred by California's safe

12    harbor doctrine.  The California Legislature enacted in 2010 the California Transparency in

13    Supply Chains Act.  Cal. Civ. Code § 1714.43.  In that statute, the Legislature addressed the very

14    issue presented here—*i.e.*, a seller's duty to disclose alleged slave labor in its supply chain—and

15    limited the seller's obligation to disclosing only its efforts to identify and eradicate such slave

16    labor.  Companies are not required to disclose whether any slave labor has been found to exist or

17    is alleged to exist.  By thus prescribing the scope of a company's disclosure duty in this

18    circumstance, "the California Legislature created a safe harbor that bars Plaintiffs' current claims."

19    *Wirth,* 2016 WL 471234, at *8.

20        This Court should dismiss plaintiffs' nondisclosure claim here for these same reasons.

21    Plaintiffs' nondisclosure claim is precisely the claim the courts have rejected as inconsistent with

22    California law.  And the safe harbor doctrine applies here for the same reasons it applied in the

23    other cases.

24        Plaintiffs' other claims are likewise meritless.  Plaintiffs allege that Costco's website

25    falsely represents that no slave labor exists in Costco's supply chain.  But the website contains no

26    such representation.  And plaintiffs do not allege in any event that they saw or relied on any

27    website statements.  Nor is there any merit to plaintiffs' assertion that Costco engaged in

28    "unlawful" conduct.

1   Like plaintiff, Costco condemns forced labor and other human rights abuses.  But this

2   lawsuit is not the proper vehicle for addressing such issues.  Because their claims fail as a matter

3   of law, and further amendment cannot cure the defects, plaintiffs' First Amended Complaint

4   should be dismissed with prejudice.

5   **STATEMENT OF ISSUES TO BE DECIDED**

6       1.       Whether plaintiffs have stated a valid claim for relief under the Unfair

7   Competition Law, False Advertising Law, and the Consumer Legal Remedies Act.

8       2.       Whether plaintiffs have standing to seek injunctive relief.

9   **BACKGROUND**

10      Since 2013, various media sources, governmental agencies and NGOs have issued reports

11  of abusive labor practices in the Thai fishing industry.  FAC, ¶¶ 24, 77, 109-11.  In June 2014,

12  *The Guardian* ran an article alleging that Charoen Pokphand Foods buys fishmeal from "some

13  suppliers that own, operate or buy from fishing boats manned with slaves."  FAC ¶¶ 24, 65.

14  Plaintiffs allege that farmed prawns sold at Costco are "derived from" this alleged slave labor

15  because the fishmeal is part of the feed used by prawn farmers that supply Costco.  FAC, ¶ 16.

16      In her original complaint, Monica Sud alleged that the "taint" affected prawns from

17  Thailand and she asserted that she purchased such Thai-farmed prawns.  ECF No. 1, ¶ 37.  This

18  Court dismissed that complaint, after receiving evidence that the prawns Sud says she purchased

19  (on her mother's Costco membership account) were from Vietnam and Indonesia, rather than

20  Thailand.  ECF No. 76, p. 5.  The FAC seeks to remedy that defect by adding conclusory

21  allegations that the alleged slave labor "taint" extends to all farmed prawns from anywhere in

22  "Southeast Asia, including but not limited to, the countries of Thailand, Indonesia, Vietnam and

23  Malaysia, and the international waters off those countries' coasts, including the Andaman Sea and

24  the Gulf of Thailand."  FAC, ¶ 5; Doc. 77-1.  The FAC also adds Sud's mother, Cecelia Jacobo,

25  as an additional plaintiff.  Sud alleges that Sud paid for the purchase on March 27, 2015, of

26  farmed prawns from Indonesia.  FAC ¶ 41.  The other purchases of prawns on Jacobo's Costco

27  card occurred on February 19, 2012, and November 13, 2012.  *Id.*  The FAC does not allege who

28  paid for those purchases.

Costco's Motion To Dismiss FAC
No. 15-CV-03783 JSW

1  Plaintiffs assert causes of action for alleged violation of the UCL (Cal. Bus. & Prof. Code

2  §§ 17200 *et seq.*), FAL (Cal. Bus. & Prof. Code §§ 17500 *et seq.*), and CLRA (Cal. Civ. Code §

3  1750 *et seq.*).

4  **ARGUMENT**

5  **I.  THE COMPLAINT DOES NOT ALLEGE A VALID NONDISCLOSURE OR**

6  **MISREPRESENTATION CLAIM UNDER THE UCL, CLRA, OR FAL.**

7  A pleading must be dismissed if it does not contain sufficient factual matter to "state a

8  claim to relief that is plausible on its face." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777,

9  784 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Material facts alleged

10  in the complaint are taken as true.  *Olagues v. Marin DA*, 2014 WL 3704918, at *3 (N.D. Cal.

11  July 23, 2014).  But plaintiffs cannot rely on conclusory allegations or legal conclusions.  *Id.*

12  **A.  Costco Did Not Engage in any Fraudulent or Deceptive Business Practice or**

13  **Advertising.**

14  Claims under the UCL, FAL and CLRA for false or deceptive advertising must comply

15  with the heightened pleading standard of Rule 9(b).  *Kowalsky v. Hewlett-Packard Co.*, 771

16  F. Supp. 2d 1138 (N.D. Cal. 2010).  "[C]laims sounding in fraud must allege an account of the

17  time, place and specific content of the false representations as well as the identities of the parties

18  to the misrepresentations."  *Id.* at 1142 (internal quotation marks omitted).

19  **1.  Costco Does Not Have a Duty to Disclose Publicly Available**

20  **Allegations Regarding the Thai Fishing Industry.**

21  Plaintiffs' principal claim is that Costco had a "duty to disclose" that the supply chain for

22  its farmed prawns is allegedly tainted by slave labor.  FAC, ¶¶ 13, 207.  This claim fails for at

23  least two reasons.

24  **(a)  California Limits a Sellers' Duty to Disclose in These**

25  **Circumstances to Safety Issues.**

26  First, no duty to disclose exists because the information at issue does not relate to a

27  consumer safety issue.  As the court explained in *Wirth* in dismissing a nearly identical claim of

28  alleged nondisclosure of slave labor in the Thai fishing industry, under the Ninth Circuit's

Costco's Motion To Dismiss FAC
No. 15-CV-03783 JSW

1    decision in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012), "a

2    manufacturer's duty to affirmatively disclose information to consumers is confined to safety

3    issues." *Wirth*, 2016 WL 471234, at *3. As the court explained, however, "[i]nformation

4    concerning the possibility of forced labor in Defendants' supply chain . . . does not present any

5    safety issues for consumers of Defendants' products." *Id.* at *4. Accordingly, the defendant was

6    "not 'bound to disclose' the omitted information." *Id. Accord Hodsdon*, 2016 WL 627383, at *6

7    (dismissing claim of nondisclosure of forced labor in chocolate supply chain because plaintiff did

8    not allege that the "labor practices pose safety risks to chocolate consumers"); *Hall*, 2015 WL

9    9659911, at *7 (dismissing claim of nondisclosure of mistreatment of whales because the

10   mistreatment did "not pose any safety concerns to plaintiffs or other visitors to SeaWorld parks").

11           As these courts have recognized, accepting plaintiffs' argument that a broad duty exists to

12   disclose any fact consumers might consider "material"

>    would effectively require any company selling any product or service to
>    affirmatively disclose every conceivable piece of information about that product
>    or service (or even about the company generally) because inevitably some
>    customer would find such information relevant to his or her purchase. Under the
>    standard argued by Plaintiffs, any consumer would have standing to sue any
>    company that fails to disclose product ingredients or components, or business
>    practices that could cause that consumer to regret patronizing that business.

18   *Hall*, 2015 WL 9659911, at *7; *see also Wirth,* 2016 WL 471234, at *5 (recognizing that, under

19   plaintiffs' theory, sellers "could be held liable for not including their products' environmental

20   impact or their company's political contributions on the labels of pet food products"). To prevent

21   this potentially "limitless" liability (*Hall*, 2015 WL 9659911, at *7), sellers "are duty-bound to

22   disclose only information about a product's safety risks and product defects. The duty to disclose

23   does not extend to situations, as here, where information may persuade a consumer to make

24   different purchasing decisions." *Hodsdon,* 2016 WL 627383, at *6.

25           The reasoning of these cases applies fully here. Just as in the other cases, plaintiffs do not

26   allege that the alleged slave labor in Thailand poses any safety issue to consumers. Rather, their

27   argument is that they and other consumers "care about the origin of the products they purchase

28   and the conditions under which the products are farmed, harvested or manufactured." FAC, ¶ 1.

This alleged concern does not trigger a duty of disclosure under California law.  Indeed, even if California law extended the duty to disclose in some circumstances beyond safety issues, plaintiffs' claim would still fail.  Plaintiffs do not claim that Costco itself, or even its direct suppliers, engaged in any forced labor practices.  The alleged misconduct here was instead by entities several steps removed from Costco in the supply chain.  And it has no bearing on the quality or performance of Costco's product.  Whatever the ultimate boundary of the duty to disclose, no authority holds that it extends to allegations of misconduct by indirect suppliers that has no impact on the quality or performance of the product.

In addition to being inconsistent with Ninth Circuit and California law, accepting the broad disclosure duty plaintiffs assert would raise serious First Amendment concerns.  While the First Amendment permits, in some circumstances, laws that compel sellers to disclose "factual and uncontroversial" information (*see Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)), the disclosure plaintiffs seek here would extend far beyond that.  It would effectively require disclosure of matters about which the seller has no first-hand knowledge and which may be controverted, or matters having little or nothing to do with the product itself.  *Zauderer* and its progeny provide no sanction for any such requirement.  *See Nat'l Ass'n of Manufacturers v. S.E.C.*, 800 F.3d 518, 524-30 (D.C. Cir. 2015) (invaliding under the First Amendment a requirement that companies report whether their products may contain "conflict minerals").[2]

              **(b)**      **Costco Did Not Have Exclusive Knowledge of the Allegedly Nondisclosed Facts.**

Plaintiffs' nondisclosure claim also fails because plaintiffs have not alleged that Costco

---

[2]      In opposing Costco's first motion to dismiss, plaintiffs relied on *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012), which held that the defendant's use of animal testing was sufficiently material to create a duty to disclose.  *Stanwood* is distinguishable because it involved conduct by the defendant, not by the defendant's indirect supplier.  But, to the extent *Stanwood* can be read to suggest that any fact that reasonably could affect a purchasing decision is material even if it does not affect the product's quality, safety, or fitness for purpose, it is impracticable and inconsistent with California's rejection of a broad duty to disclose, and it should not be followed.  *See Hodsdon*, 2016 WL 627383, at *6 (rejecting plaintiffs' reliance on *Stanwood*); *Wirth*, 2016 WL 471234, at *5 (same); *Hall*, 2015 WL 9659911, at *7 n.10 (same).

1   has "exclusive knowledge" of the information.[3]  "To comport with Rule 9(b), a plaintiff alleging

2   the existence of a duty to disclose must offer 'specific substantiating facts' demonstrating that the

3   defendant has 'exclusive knowledge.'"  *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *6

4   (N.D. Cal. June 20, 2013).  Plaintiffs have not done so.  The only fact plaintiffs allege to show

5   that Costco knew of alleged forced labor in its supply chain is that *The Guardian* published an

6   article asserting that Costco's prawns were tainted by feed from CP Foods.  FAC, ¶ 65.  Plaintiffs

7   also cite reports alleging problems in the Thai fishing industry generally, but without referring to

8   Costco or its suppliers.  Plaintiffs do not allege that Costco knew whether any of the allegations

9   against CP Foods' sub-suppliers, or against the Thai fishing industry in general, are true.  But, in

10  any case, knowledge derived solely from media articles and government reports that are widely

11  published and easily accessible on the internet is the opposite of "exclusive."  *Herron v. Best Buy*

12  *Co. Inc.*, 924 F. Supp. 2d 1161, 1175-76 (E.D. Cal. 2013) (Best Buy did not have exclusive

13  knowledge of alleged defects in battery testing method where *Newsweek* had published an article

14  criticizing the method); *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *8 (C.D. Cal.

15  Jan. 23, 2012) (Toyota did not have exclusive knowledge that the Prius's real-world efficiency

16  did not equal EPA mileage estimates where Consumer Reports and USA Today published articles

17  on the issue).

18              **2.        Costco Did Not Make Any False or Misleading Statements.**

19          Plaintiffs also allege that Costco falsely represented that that "it does not tolerate human

20  trafficking and slavery in its supply chain."  FAC, ¶ 19.  This claim is also groundless.

21          First, plaintiffs allege only two Costco representations:  a Disclosure published on

22  _____

23  [3]      In some circumstances (not including those here, for the reasons discussed above), courts
    have held that a duty to disclose may arise when (1) a fiduciary relationship exists, (2) the

24  defendant has exclusive knowledge of material facts not known or reasonably accessible to the
    plaintiff; (3) the defendant actively conceals a material fact; or (4) the defendant makes

25  misleading partial representations.  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011).
    If this general test were otherwise applicable here (rather than the rule applied in *Wirth, Hodsdon,*

26  *Hall*, and similar cases), the first and third prongs would be inapposite because plaintiffs do not
    allege a fiduciary relationship or active concealment.  The fourth prong would not apply because,

27  as discussed below, Costco's Disclosure is not misleading.  That leaves plaintiffs to argue only
    the second "exclusive knowledge" prong.

28

Costco's website regarding its Code of Conduct (FAC, ¶ 19) and Costco's statement that it would require its suppliers to take corrective action to police their feed stock sources. *Id.* ¶ 66. Plaintiffs do not allege that they saw or relied on either statement. This by itself defeats their claim. *Hall*, 2015 WL 9659911, at *5 (dismissing misrepresentation claim because plaintiffs did not allege "that any of the named plaintiffs saw and relied on SeaWorld's statements about its treatment of whales"); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014) (holding that the plaintiffs did not plead actual reliance as required for standing where the plaintiffs did not "allege that they saw, read, or relied on any representations" by the defendant prior to making their purchases).

Second, plaintiffs do not allege any facts showing that Costco's statements were incorrect or misleading. They conclusorily assert that "any representation by Costco that slavery in the supply chain is not allowed is simply false." FAC, ¶ 20. But they allege no facts supporting that assertion. That Costco has a Code of Conduct prohibiting its suppliers from using forced labor and requiring them to ensure that their sub-suppliers also prohibit forced labor does not mean that Code never will be violated at any level of the supply chain. On the contrary, Costco's Disclosure contemplates that violations will be discovered from time to time and states that Costco "prefer[s] working with the supplier to correct Code violations rather than immediately terminating the relationship" because "[t]ermination is unlikely to correct the underlying issue and may cause further hardship to workers or their families." FAC, ¶ 19. Similarly, in response to the *Guardian* article, Costco stated that it would require its suppliers to take corrective action (*id.* ¶ 61), not that it would immediately terminate its relationship with them. In short, the Disclosure is not a guarantee that Costco's entire supply chain is completely free of forced labor.

### B.    Plaintiffs' CLRA Claim Also Fails.

In addition to the reasons discussed above, plaintiffs' CLRA claim independently fails because plaintiffs do not allege facts showing that Costco engaged in any of the acts the CLRA prohibits. Plaintiffs assert that Costco misrepresented the "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities" of farmed prawns (FAC, ¶ 215 (citing Cal. Civ. Code § 1770(a)(5)) and the "standard, quality, or grade" of such prawns (*id.* ¶ 216(citing Cal. Civ. Code

1   § 1770(a)(7)); and that it advertised the prawns "with intent not to sell them as advertised." *Id.* ¶

2   217 (citing Cal. Civ. Code § 1770(a)(9)).  But the only Costco statement plaintiffs cite to support

3   these allegations is Costco's Disclosure.  *Id.* ¶¶ 215-17.  That Disclosure says nothing about

4   prawns, let alone anything that falls within any of the CLRA's provisions.  Nor do plaintiffs

5   allege that they viewed or relied on the Disclosure, and they therefore do not have standing to

6   base a claim on it.[4]

7       Plaintiffs also allege that Costco should have disclosed "unlawful labor abuses in the

8   supply chain." FAC, ¶ 215.  As shown above, Costco has no duty to disclose those allegations.

9   But, in any event, those allegations relate to the conduct of Costco's supplier's supplier or sub-

10  supplier, not the sponsorship, characteristics, ingredients, uses, benefits, quantities, standard,

11  quality or grade of the prawns that Costco sells.

12          **C.    The FAL Does Not Apply to Alleged Omissions.**

13      In addition to the reasons discussed above, any nondisclosure claim under the FAL fails

14  because the FAL does not apply to omission claims.  The FAL makes it unlawful "to make or

15  disseminate or cause to be made or disseminated . . . any statement . . . which is untrue or

16  misleading." Cal. Bus. & Prof. Code § 17500.  Based on this express statutory language requiring

17  a "statement," courts have dismissed FAL claims to the extent they rest on alleged nondisclosure.

18  See *Hodsdon*, 2016 WL 627383, at *6 ("when the defendant has not made any statements at all, a

19  plaintiff cannot assert a claim under the FAL"); *Norcia v. Samsung Telecomm. Am., LLC*, 2015

20  WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) (dismissing FAL claim based on an omission

21  because "[t]here can be no FAL claim where there is no 'statement'").

22  **II.    COSTCO DID NOT ENGAGE IN ANY UNFAIR BUSINESS PRACTICE.**

23      Plaintiffs' contention that Costco's sale of allegedly tainted prawns is an "unfair" practice

24  under the UCL is also groundless.

25

26  [4]     The FAC also cites California Civil Code Section 1770(a)(16), which prohibits
    "representing that the subject of a transaction has been supplied in accordance with a previous
27  representation when it has not." FAC, ¶ 218.  However, the FAC does not allege that Costco
    breached this provision.
28

In *Cel-Tech Comm'ns Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 188 (1999), the Court rejected earlier cases that had defined "unfair" to mean any practice that "offends an established public policy," that is "unethical, oppressive, unscrupulous or substantially injurious to consumers," or that imposes harm that outweighs its utility. *Id.* at 184. The Court stated that "these definitions are too amorphous and provide too little guidance to courts and businesses." *Id.* at 185. The Court held that, in direct competitor cases, a practice is "unfair" only if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." *Id.* at 187.

The Supreme Court has not, however, addressed the test that applies in consumer cases, which has resulted in the lower courts applying two different standards. Some have held, consistent with *Cel-Tech*, that a claim of unfairness must be "tethered" to a public policy established by a specific constitutional, statutory, or regulatory provision. *See, e.g., Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 613 (2014). Others have continued to apply the pre-*Cel-Tech* standard under which the benefit of an alleged practice is weighed against the harm it causes to consumers. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).[5]

This Court need not choose between these tests because plaintiffs have failed to state a claim under either of them. Plaintiffs' claim fails under the pre-*Cel-Tech* test because the harm they allege for this claim is not any injury to themselves as consumers, but harm to workers purportedly forced into "slave labor" several tiers down the supply chain. FAC, ¶ 197. Plaintiffs may seek redress only for their own alleged injury (if any exists), not for injuries to third parties. *See, e.g., Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972). Nor can plaintiffs plausibly argue that it is unfair to sell farmed prawns from Southeast Asia because, having now read reports of forced labor in the Thai fishing industry, they regret allegedly purchasing them. The reports on which plaintiffs rely are readily accessible. Plaintiffs easily could have read them before

---

[5]    Some courts have applied the test under Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(n)). *See, e.g., Camacho v. Automobile Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006). That test is limited to cases alleging anti-competitive conduct, however, and thus is inapplicable here. *Hodsdon,* 2016 WL 627383, at *7 n.5. And Costco's sale of prawns does not violate that test in any event, for the same reasons it does not violate either of the other tests.

1   purchasing seafood had they cared to do so. Their purported regret at having purchased prawns

2   without first reading those reports does not justify making Southeast Asian prawns unavailable to

3   all other consumers in California who may want to purchase them.

4        Plaintiffs' claim also fails under the post-*Cel-Tech* tethering standard because no

5   constitutional, statutory, or regulatory provision prohibits the sale of products allegedly "tainted"

6   by the use of forced labor several tiers down the supply chain. As discussed in the following

7   section, the California Legislature addressed this issue, not by requiring companies to take any

8   specific action to eliminate forced labor from their supply chains or stop selling products where

9   forced labor may exist, but rather by requiring them to disclose on their websites their efforts to

10  combat forced labor so that interested consumers may consider those efforts in their purchasing

11  decisions. *See* Cal. Civ. Code § 1714.43. Although Congress in the Tariff Act prohibited

12  importation of products produced using forced labor, it did not prohibit importation of goods

13  allegedly "tainted" by the use of forced labor many steps down the supply chain. *See supra,* p. 14.

14  Thus, plaintiffs' "unfairness" theory is not only untethered to any statutory or regulatory

15  provision, it is contrary to the most relevant federal and State legislation.[6]

16  **III.    PLAINTIFFS' CLAIM IS BARRED BY THE SAFE HARBOR DOCTRINE.**

17       The foregoing is by itself sufficient to require dismissal of plaintiffs' UCL fraudulent and

18  unfair claims, and their CLRA and FAL claims. Those claims also independently fail because

19  they are barred by the safe harbor doctrine, as the two courts that recently considered this exact

20  issue in relation to the Thai fishing industry have held. *Barber*, 2015 WL 9309553, at *2-5;

21  *Wirth,* 2016 WL 471234, at *6-9.

22       "Although the unfair competition law's scope is sweeping, it is not unlimited." *Cel-Tech.*,

23  20 Cal. 4th at 182. Where state or federal law "has permitted certain conduct or considered a

24  situation and concluded no action should lie, courts may not override that determination. When

25  specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition

26  _____

27  [6]     As to all of plaintiffs' claims under the UCL or for other equitable relief, Costco joins in
the CP defendants' argument that this Court should abstain from adjudicating those claims.

28  *Walsh v. Kindred Healthcare,* 798 F. Supp. 2d 1073, 1084-85 (N.D. Cal. 2011).

1   law to assault that harbor." *Id.*  Here, such "specific legislation" exists.  The Supply Chains Act

2   requires any manufacturer doing business in California with annual gross receipts exceeding $100

3   million to make specific disclosures on its website about efforts it makes to "eradicate slavery and

4   human trafficking from its direct supply chain."  Cal. Civ. Code § 1714.43.  Importantly, however,

5   the Supply Chains Act does not require companies to make any disclosures regarding the

6   existence of slavery or human trafficking in its supply chain.

7          By enacting this statute, the Legislature has considered and acted upon the precise issue

8   presented by plaintiffs' complaint—*i.e.*, the disclosures companies are required to make regarding

9   slavery or human trafficking in their supply chain.  And the Legislature has determined that the

10  disclosures plaintiffs seek are not required.  As the court in *Wirth* put it, "the California

11  Legislature considered the exact issue in this case:  what information companies are required to

12  disclose to consumers about forced labor in their supply.  By prescribing '*who* must disclose

13  information about forced labor in their supply chains, *what* they must disclose, and *how* they must

14  disclose it,' . . . the California Legislature created a safe harbor that bars Plaintiffs' current claims."

15  2016 WL 471234, at *8; *see also Barber*, 2015 WL 9309553, at *4 (same).

16         As *Wirth* and *Barber* recognized, the Supply Chains Act's legislative history strongly

17  supports this conclusion.  The Assembly Committee Bill Analysis makes clear that the statute

18  establishes that companies are not required "to do anything other than make available the facts

19  about what if anything they are doing to deter human trafficking and in their product supply

20  chains."  *See* http://www.leginfo.ca.gov/pub/09-10/bill/sen/sb_0651-

21  0700/sb_657_cfa_20100628_112914_asm_comm.html.[7]  The statute leaves companies

22  "completely free to do anything they want about their efforts to fight human trafficking and

23  slavery, they simply need to note this information on their websites and make such information

24  available to interested consumers."  *Id.*  As *Barber* held, "[t]his language is impossible to square

25  _____

26  [7]     Costco requests that the Court take judicial notice of this Bill Analysis, and of the Bill
    Analysis from the Senate Judiciary Committee.  *See* http://www.leginfo.ca.gov/pub/09-

27  10/bill/sen/sb_0651-0700/sb_657_cfa_20100729_160139_asm_floor.html.  *See Foronda v. Wells
    Fargo Home Mortg., Inc.,* 2014 WL 6706815, at *6 (N.D. Cal. Nov. 26, 2014) (citation omitted)

28  (taking judicial notice of Senate floor analysis).

Costco's Motion To Dismiss FAC
No. 15-CV-03783 JSW

1    with Plaintiffs' current contention that California consumer protection law requires companies to

2    make disclosures beyond what § 1714.43 requires in order to adequately inform California

3    consumers." *Barber*, 2015 WL 9309553, at *4.[8]

4    **IV.    COSTCO DID NOT ENGAGE IN ANY UNLAWFUL BUSINESS PRACTICE.**

5         Plaintiffs allege that "Defendants" engaged in unlawful conduct by violating various

6    statutes. FAC, ¶ 195. These allegations are all but meaningless because they do not distinguish

7    between Costco and the other two defendants.[9] Plus, the allegations are wholly conclusory. They

8    do not identify the provisions of each Act that Costco is alleged to have violated, and they do not

9    explain how any of Costco's alleged conduct constitutes a violation.

10        "[A] UCL claim must identify the particular section of the statute that was violated, and

11   must describe with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-*

12   *Packard Co.*, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) (internal citations and quotation

13   marks omitted); *see also Hodges v. Apple Inc.*, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12,

14   2013) ("Because Hodges fails to plead with particularity how Apple violated any statute, he also

15   fails to adequately plead a violation under the UCL's 'unlawful' prong.") (citation omitted).

16   Plaintiffs have not met this requirement, which by itself defeats their UCL "unlawful" claim.

17        In addition, the statutes on which plaintiffs base their claim are inapposite:

18   • The Universal Declaration on Human Rights is an aspirational document that "does

19        not of its own force impose obligations as a matter of international law." *Sosa v.*

20        *Alvarez-Machain*, 542 U.S. 692, 734 (2004).

21   ───────────────

    [8]    In *Hodsdon*, the court declined to rule on the safe harbor defense, noting that its ruling
22   that the defendant did not have a duty to disclose made it unnecessary to reach the issue and
     further observing that there are "reasons to question" whether the defense applies. 2016 WL
23   627383, at *9. This Court likewise need not reach the issue. But if it does, it should follow the
     rulings in *Barber* and *Wirth*, which fully addressed the relevant issues and properly concluded
24   that the defense applies.

25   [9]    *See, e.g., Ogala v. Chevron Corp.*, 2014 WL 2089901, at *2 (N.D. Cal. May 19, 2014)
     ("Plaintiffs refer to Chevron, CII, CUSA, and CNL collectively as 'Chevron' throughout the
26   Complaint. It is consequently impossible to tell whether allegations refer to a defendant, multiple
     defendants, or CNL (which is not a party)."); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911-
27   12 (C.D. Cal. 2011) (complaint failed to state a claim where its factual allegation did not
     differentiate among related entities).

28

Costco's Motion To Dismiss FAC
No. 15-CV-03783 JSW

1    • The Supply Chains Act cannot be the basis for a UCL claim because "[t]he exclusive

2      remedy for a violation . . . shall be an action brought by the Attorney General for

3      injunctive relief." *See* Cal. Civ. Code § 1714.43(d); *Perea v. Walgreen Co.*, 939 F.

4      Supp. 2d 1026, 1039-40 (C.D. Cal. 2013) (statute providing for exclusive enforcement

5      by an administrative agency could not be the basis for a UCL claim).

6    • The Tariff Act prohibits importation of goods "produced or manufactured wholly or in

7      part in any foreign country by convict labor or/and forced labor." *See* 19 U.S.C.

8      § 1307. But it does not prohibit importation of goods allegedly "tainted" by the use of

9      forced labor many steps down the supply chain. And, in any event, the Commissioner

10      of Customs must declare goods to be the product of forced labor before their

11      importation is banned under Section 1307. *See Mugworld, Inc. v. G.G. Marck &*

12      *Assocs. Inc.*, 563 F. Supp. 2d 659, 665 (E.D. Tex. 2007). Plaintiffs do not allege the

13      Commissioner has done so.

14    • The Anti-Trafficking in Persons Act is a Thai statute. FAC, ¶ 150. The UCL does not

15      apply extraterritorially (*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)), and

16      "no courts have 'allow[ed] a plaintiff to import either statutes or precedent from

17      another state as an unlawful business practice." *Hilton v. Apple Inc.*, 2014 WL

18      10435005, at *3 (C.D. Cal. April 18, 2014).

19    • California Penal Code Section 236.1 prohibits depriving a person of personal liberty

20      with intent to obtain forced labor. *See also* Cal. Penal Code §§ 236, 237 (defining

21      false imprisonment as violating the "personal liberty of another"). Plaintiffs do not

22      allege that Costco deprived anyone of personal liberty. The allegations of forced labor

23      also concern conduct in Southeast Asia, which is beyond the reach of the California

24      Penal Code. *See* Cal. Penal Code § 27.

25      Finally, plaintiffs do not allege that they were injured or lost money or property as a result

26  of any statutory violation. To the contrary, plaintiffs claim that forced labor in its supply chain

27  enables Costco to "maintain competitive prices." FAC, ¶ 67. Thus, they do not have standing to

28  assert a UCL claim for any such violation. *See* Cal. Bus. & Prof. Code § 17204.

Costco's Motion To Dismiss FAC
No. 15-CV-03783 JSW

1  **V.      PLAINTIFFS DO NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF.**

2          Plaintiffs' claim for injunctive relief falls along with the rest of the complaint for the

3  reasons discussed above.  It also independently fails because plaintiffs lack standing to assert it.

4  To establish Article III standing to obtain prospective injunctive relief, plaintiffs must allege facts

5  showing a "sufficient likelihood" that a plaintiff will again be injured "in a similar way."

6  *Garrison v. Whole Foods Market Group, Inc.*, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014)

7  (internal citations and quotation marks omitted).

8          Plaintiffs lack standing because they do not allege that, absent the injunctive relief, they

9  will be deceived by the challenged statements again.  Nor could they plausibly so allege, given

10  that they now admittedly are aware of the alleged forced labor in Southeast Asia.  *See, e.g.*,

11  *Garrison*, 2014 WL 2451290, at *5 (dismissing injunction claim because plaintiff knew the

12  product's allegedly misrepresented characteristics and thus could plausibly allege future injury);

13  *Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004, at *7 (N.D. Cal. May 6, 2015) ("Now that

14  she has been clued into these alleged misrepresentations, it is unlikely, based upon her own

15  allegations, that Plaintiff would again suffer the same harm."); *Rahman v. Mott's LLP*, 2014 WL

16  5282106, at *6 (N.D. Cal. Oct. 15, 2014); *Morgan v. Wallaby Yogurt Co.*, 2014 WL 1017879, at

17  *6 (N.D. Cal. Mar. 13, 2014).

18                                     **CONCLUSION**

19          The First Amended Complaint should be dismissed with prejudice.

20  Dated: March 11, 2016                          Respectfully submitted,

21                                                  JONES DAY

22
                                                    By:  s/Craig E. Stewart
23                                                        Craig E. Stewart

24                                                  Counsel for Defendant
                                                    COSTCO WHOLESALE CORPORATION
25

26  NAI-1500887574v1

27

28