1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7    MONICA SUD, et al.,                    Case No.  15-cv-03783-JSW
8                    Plaintiffs,            **ORDER GRANTING MOTIONS TO**
                                            **DISMISS FIRST AMENDED**
9          v.                               **COMPLAINT**
10   COSTCO WHOLESALE CORPORATION,          Re: Dkt. Nos. 80, 81
     et al.,
11
                     Defendants.
12
13
14         Now before the Court for consideration is the motion to dismiss filed by Defendants

15   Charoen Pokphand Foods ("Charoen"), PCL, C.P. Food Products, Inc. ("CP Foods") (collectively

16   the "CP Defendants").  Also before the Court is the motion to dismiss filed by Costco Wholesale

17   Corporation ("Costco") (collectively "Defendants").  The Court has considered the parties' papers,

18   relevant legal authority, and the record in this case, and it HEREBY GRANTS the motions, and it

19   DISMISSES this case with prejudice.

20                              **BACKGROUND**

21   **A.     Procedural History.**

22         On August 19, 2015, Plaintiff Monica Sud ("Sud") filed this putative class action asserting

23   claims under California's: Unfair Competition Law ("UCL"), Business and Professions Code

24   sections 17200, *et seq.*; False Advertising Law ("FAL"), Business and Professions Code sections

25   17500, *et seq.*; and Consumer Legal Remedies Act ("CLRA"), Civil Code sections 1750, *et seq.*

26   Each of these claims were based on allegations that Costco sold and the CP Defendants supplied

27   prawns farmed in Thailand, for which the supply chain was tainted by slavery, human trafficking,

28   and other illegal labor practices.

United States District Court
Northern District of California

On January 15, 2016, the Court granted the Defendants' motion to dismiss on the basis that Sud lacked Article III standing, because she had not alleged facts to show that she purchased prawns that were a product of Thailand.  (*See* Dkt. No. 76.)  The Court gave Sud leave to amend to (1) expand the allegations to cover the purchase of prawns farmed in countries other than Thailand; (2) add her mother, Cecilia Jacobo ("Jacobo") as a class representative to such expanded claims; or (3) amend to include an additional class representative who could allege facts showing that he or she purchased prawns that are a product of Thailand.  On February 19, 2016, Sud and Jacobo ("Plaintiffs") filed their First Amended Complaint ("FAC"), in which they assert a claim under the UCL against the Defendants.  Plaintiffs also assert a claim under the FAL and under the CLRA against Costco.

**B.    Factual Background.**

Plaintiffs allege that Costco sells farmed prawns that "come from Southeast Asia, including, but not limited to, the countries of Thailand, Indonesia, Vietnam, and Malaysia, and the international waters off these countries' coasts[.]"  (FAC ¶ 5.)  Plaintiffs allege the supply chain for these farmed prawns, specifically the fish used to create fishmeal for the framed prawns depends on slavery, human trafficking, and other labor abuses.  Plaintiffs also allege that Charoen and CP Foods supply such prawns to Costco.  (FAC ¶¶ 12-13, 16; *see also id.*, ¶¶ 80-134 (detailing facts underlying allegations regarding slavery, human trafficking and labor abuses).)

Plaintiffs allege that Defendants are aware the feed for the prawns comes from trash fish caught on boats that use slave labor or other illegal labor practices, including human trafficking.  (*See, e.g., id.* ¶¶ 13, 15, 79, 196.)  According to Plaintiffs, Costco publicly states on its website that it has a "supplier Code of Conduct which prohibits human rights abuses in our supply chain[.]"  (*Id.* ¶ 19.)  Plaintiffs allege these statements are misleading, because Costco continues to sell prawns that it knows are derived from a supply chain tainted by slavery, human trafficking and other human rights violations.  Plaintiffs also allege Costco fails to advise consumers of this fact and allege that it "market[s] and sell[s] the product in packages which only advise that the contents are imported as a product from a foreign country…."  (*Id.* ¶¶ 13, 15-19.)

United States District Court
Northern District of California

2

1    Plaintiffs also allege the CP Defendants[1] are aware the fishmeal for prawns is tainted by

2    slave labor, have made public statements that they are "'committed' to ensuring that [their] supply

3    chain is free from these human rights violations," continue to sell prawns tainted by these abuses,

4    and fail to disclose that fact to California consumers.  (*See id.* ¶¶ 8, 69-79.)

5    Plaintiffs each purchased prawns from Costco, which were sourced from Indonesia and

6    Vietnam.  (*Id.* ¶¶ 37-38, 41.)  Plaintiffs expanded the allegations of their original complaint, and

7    they now seek to represent a class of "persons and entities residing in California that [*sic*], from at

8    least 2011, through the present purchased frozen (or previously frozen) Southeast Asian farmed

9    prawn products in the United States from Costco[.]"  (*Id.* ¶ 187.)  Plaintiffs allege they would not

10   have purchased these prawns if they were aware of the facts regarding the supply chain.  Plaintiffs

11   also allege that they "would want to purchase farmed prawns from Defendants in the future but

12   only if Defendants address the human rights abuses in their supply chains and couple that effort

13   with full compliance with the California Transparency in Supply Chains Act[2] so that Plaintiffs can

14   make informed purchasing decisions."  (*Id.* ¶¶ 26, 42.)

15   The Court shall address additional facts as necessary in its analysis.

16                                    **ANALYSIS**

17   The facts described in the FAC are tragic and "raise significant ethical concerns."  *McCoy*

18   *v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 956 (N.D. Cal. 2016) (discussing use of child labor in

19   supply chain for cocoa products).  The issue this Court faces, as others have before it, "is whether

20   California law requires corporations to inform customers" of these facts "on their product

21   packaging and point of sale advertising."  *Id.*; *see also Hodson v. Mars, Inc.*, 162 F. Supp. 3d 1016

22   (N.D. Cal. 2016) (addressing allegations of child labor in supply chain for cocoa products); *Dana*

23   *v. The Hershey Company, Inc.*, No. 15-cv-04453-JCS, 2016 WL 1213915 (N.D. Cal. Mar. 29,

24   2016) (same); *Wirth v. Mars Inc.*, No. SA CV 15-1470-DOC (KESx), 2016 WL 471234 (C.D. Cal.

25   Feb. 5, 2016) (addressing allegations of slave labor and forced labor in supply chain for seafood

26

27   [1]      Plaintiffs refer collectively throughout the FAC to the CP Defendants as CP Foods and do not clearly distinguish between these two defendants.

28   [2]      California Civil Code § 1714.43.

United States District Court
Northern District of California

3

used in petfood); *Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954, (C.D. Cal. 2015) (same).[3]  The Court concludes Plaintiffs' claims cannot proceed.

**A.    The Court Grants the CP Defendants' Motion to Dismiss for Lack of Standing.**

        The CP Defendants move to dismiss the UCL claim, in part, for lack of Article III standing.  Because this is a threshold issue, and because the Court finds it dispositive, it does not reach the CP Defendants' alternative arguments.[4]  The Court evaluates a motion to dismiss for lack of Article III standing under Rule 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A motion to dismiss under Rule 12(b)(1) may be "facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack on jurisdiction occurs when factual allegations of the complaint are taken as true.  *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted).  The plaintiff is then entitled to have those facts construed in the light most favorable to him or her.  *Federation of African Am. Contractors*, 96 F.3d at 1207.

        In order for Plaintiffs to establish standing, they must show they: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61).  Plaintiffs must "'clearly allege ... facts demonstrating' each element."  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Plaintiffs allege that Costco sells prawns sourced by the CP Defendants.  (FAC ¶ 72.)  However, Plaintiffs

---

[3]      Each of these cases is currently on appeal to the United States Court of Appeals for the Ninth Circuit.

[4]      The CP Defendants also move to dismiss for lack of personal jurisdiction, which is their primary argument, lack of statutory standing and failure to state a claim.  The CP Defendants also argue that the Court should equitably abstain from adjudicating this case, and Costco joined in that argument.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    do not allege that the prawns they purchased were sourced by either of the CP Defendants, and

2    there are no facts in the FAC from which the Court could reasonably infer that is the case.  A key

3    component of Article III standing is "traceability, *i.e.,* a causal connection between the injury and

4    the actions" about which a plaintiff complains.  *Easter v. American West Financial*, 381 F.3d 948,

5    961-62 (9th Cir. 2004) (finding that plaintiffs who could not trace injury to a particular defendant

6    did not have standing to sue that defendant).  Thus, in cases "where there are multiple defendants

7    and multiple claims, there must exist at least one named plaintiff with Article III standing as to

8    each defendant and each claim - but a single named plaintiff who can meet these criteria will

9    suffice[.]"  *Reniger v. Huyndai Motor America*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015).

10           In response to the CP Defendants' argument that, for this same reason, Plaintiffs lack

11   statutory standing to pursue the UCL claim, Plaintiffs argue they "need not have purchased every

12   product covered by the class," and that they have standing to assert this claim "regardless of the

13   branding."  (Dkt. No. 83, Opp. Br. at 22:6-7, 24:14-15.)  Plaintiffs rely on a number of food

14   labelling cases in which a defendant argued the plaintiff lacked standing to sue based on products

15   the plaintiff had not purchased.  In those cases, the issue was whether the plaintiff had standing to

16   sue based on products they had not purchased but which had been manufactured or marketed by

17   the same defendant or defendants.  In each case, at least one of the plaintiffs did allege they

18   purchased at least one product from the defendant or defendants.  In sum, there was no dispute the

19   plaintiffs alleged an injury caused by and traceable to the defendant or defendants.  *See Brown v.*

20   *The Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 889-90 (N.D. Cal. 2012); *Cardenas v.*

21   *NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012); *Astiana v. Dreyer's Grand Ice Cream,*

22   *Inc.*, No. 11-cv-2190-EMC, 2012 WL 2990766, at *1, *12-23 (N.D. Cal. July 20, 2012); *Koh v.*

23   *S.C. Johnson & Son, Inc.*, No. 09-CV-927-RMW, 2010 WL 94265, at *2-3 (N.D. Cal. Jan. 6,

24   2010).[5]

25           The *McCoy* and *Hudson* courts similarly concluded that the plaintiffs had standing under

26

27   [5]      Plaintiffs also rely on *Colucci v. Zoneperfect Nutrition Company*, No. 12-CV-2907-SC,
     2012 WL 6737800 (N.D. Cal. Dec. 28, 2012).  In that case, the court dismissed claims of one of
28   the plaintiffs, because he failed to allege he purchased the defendant's product.  *Id.*, 2012 WL
     6737800, at *5.

United States District Court
Northern District of California

1    Article III.  Again, in those cases, there was no dispute the plaintiffs purchased a product

2    manufactured or marketed by any of the named defendants.  *See McCoy*, 173 F. Supp. 3d at 962-

3    64; *Hodson*, 162 F. Supp. 3d at 1021-23.  Because Plaintiffs do not allege they purchased any

4    prawns that were produced or marketed by either of the CP Defendants, they fail to allege facts to

5    show that they have Article III standing to pursue the UCL claim against the CP Defendants.[6]

6        Accordingly, the Court GRANTS the CP Defendants' motion to dismiss on this basis.[7]

7    **B.     The Court Grants Costco's Motion.**

8        Costco argues: (1) it did not owe Plaintiffs a duty to disclose the information at issue; (2)

9    the FAL does not apply to omissions; (3) the claims are barred by the safe harbor doctrine; and (4)

10   Plaintiffs lack standing to seek injunctive relief.  Because the Court finds the first two arguments

11   dispositive, and because those arguments impact Plaintiffs' ability to state a violation of any of the

12   statutes at issue, the Court does not reach Costco's alternative arguments.

13       On a motion to dismiss under Rule 12(b)(6), a court's "inquiry is limited to the allegations

14   in the complaint, which are accepted as true and construed in the light most favorable to the

15   plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the

16   liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to

17   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

18   a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v.*

19   *Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

20   Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must

21   allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim

22   has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the

23

24   [6]     To the extent Plaintiffs rely on allegations of agency, conspiracy, aiding and abetting, and

25   concerted actions to show they were injured by the CP Defendants, those allegations are mere
     legal conclusions couched as fact.  (*See* FAC ¶¶ 48-50.)  *Cf. Easter*, 381 F.3d at 962 (concluding

26   plaintiffs failed to establish a juridical link between defendants).

27   [7]     For that same reason, and assuming the Court could assert personal jurisdiction over either

28   Charoen or CP Foods, Plaintiffs lack statutory standing under the UCL.  Because they have not
     alleged they purchased prawns produced by either of the CP Defendants, they have not alleged
     facts showing they lost money or property as a result of the CP Defendants' conduct.

1   reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

2   556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

3         **1.**        **Reliance and Statutory Standing Under the CLRA, UCL and FAL.**

4         The Court begins with Costco's argument regarding reliance, because Plaintiffs must

5   allege reliance to show they have statutory standing to pursue each of their claims.  *See In re*

6   *Tobacco II Cases*, 46 Cal. 4th 289, 326 (2009) ("*Tobacco II*"); *Hodson*, 162 F. Supp. 3d at 1022.

7   Based on the facts of this case, this issue will impact the scope of Plaintiffs' claims.

8         In order to show actual reliance, whether based on an affirmative misrepresentation or a

9   material omission, Plaintiffs must demonstrate that the misrepresentation or omission was an

10   "immediate cause of the injury-causing conduct."  *Tobacco II*, 46 Cal. 4th at 328; *accord Daniel v.*

11   *Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).  Plaintiffs need not prove the

12   misrepresentation or omission was the "only," "sole," "predominant," or "decisive" cause of the

13   injury-causing conduct.  Rather, they may show that the misrepresentation or omission was a

14   substantial factor in their decision making process.  *Daniel*, 806 F.3d at 1225; *Tobacco II*, 46 Cal.

15   4th at 328.  If an omission is material, the fact that one would have behaved differently "can be

16   presumed, or at least inferred."  *Daniel*, 806 F.3d at 1225.  However, a plaintiff cannot use that

17   presumption, "if the evidence establishes an actual lack of reliance."  *Lanovaz v. Twinings North*

18   *America, Inc.*, No. 12-cv-02646-RMW, 2014 WL 46822, at *3 (N.D. Cal. Jan. 6, 2014) (citing,

19   inter alia, *In re Tobacco II*, 46 Cal. 4th at 327); *cf. In re iPhone Application Litig.*, 6 F. Supp. 3d

20   1004, 1020 (N.D. Cal. 2013) (presumption cannot be applied to misrepresentations plaintiffs never

21   saw).

22         In *Daniel*, the court identified two "sub-elements" a plaintiff must prove to show an

23   omission was a substantial factor in a purchasing decision: awareness; and a change in behavior.

24   806 F.3d at 1225-26.  The latter sub-element may be presumed if the omitted information is

25   material, but a plaintiff must still be able to show she would have been aware of the information if

26   it had been disclosed.  *Id.* at 1225-26.  In *Daniel*, the court found that the plaintiffs created a

27   genuine issue of material fact about whether they would have been aware of the omitted

28   information.  There, the plaintiffs presented evidence that the defendant disclosed the allegedly

United States District Court
Northern District of California

United States District Court
Northern District of California

omitted information to its dealerships, and plaintiffs testified that they engaged with and obtained information from sales staff at the dealerships before they purchased their cars. *Id.* "Since Plaintiffs have sufficient evidence to establish a plausible method of disclosure and to establish that they would have been aware of information disclosed using that method, there is a genuine issue of material fact as to whether they in fact relied on" defendant's omissions. *Id.* at 1227 (emphasis added).

Plaintiffs allege Costco fails to include information about the labor abuses in the supply chain for farmed prawns on the packaging and, instead, states only that the prawns are a product of a given country. (FAC ¶ 15.)  There are sufficient allegations in the FAC from which the Court could infer Plaintiffs relied on the statements on the packaging before they purchased the prawns at issue and, thus, that they have statutory standing to pursue their claims based on that omission.

However, Plaintiffs' allegations regarding Costco's conduct are based, in part, on the fact that Costco publishes a "Disclosure Regarding Human Trafficking and Anti-Slavery" (the "Disclosure") on its website.  They also are based on the fact that Costco advertises a supplier Code of Conduct, which purports to prohibit the type of labor abuses described in the FAC.  (FAC ¶¶ 18-20, 59-61.)  According to Plaintiffs, through the Disclosure, Costco "affirmatively represents to consumers that it makes efforts to monitor its suppliers to eradicate human rights abuses in the supply chain."  (*Id.* ¶ 19.)  Plaintiffs also allege that Costco's "practices are fraudulent in that ... Costco affirmatively represents that it enforces standards to prohibit the use of slave labor."  (*Id.* ¶ 196.)

While the Disclosure might have been a "plausible method" of disclosing the fact that Costco sells prawns "tainted" by labor abuses in the supply chain, neither Plaintiff alleges that she read or relied on the Disclosure before she purchased prawns from Costco.  Therefore, to the extent their claims are based allegations that the Disclosure is misleading, either because it contains affirmative misrepresentations or because it omits information, Plaintiffs fail to allege facts to show reliance.  Similarly, Plaintiffs have not alleged they read or relied on Costco's Code of Conduct and, thus, fail to allege facts to show they relied on any affirmative statements in that Code.  They also fail to allege facts to show they were aware of the Code, such that they could

premise an omissions claim on it.  *See, e.g., Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1218 (S.D. Cal. 2012) (dismissing claims relating to website and other documents where plaintiff did not allege "that she viewed any of those sources, and therefore cannot link her injuries to those misrepresentations").

Further, although in paragraph 207 Plaintiffs refer to generally "false statements in [Costco's] television, radio, and print advertising, website, brochures, and … other written and oral materials," they do not allege with particularity any advertisements on which they relied. Plaintiffs also do not attempt to allege that Costco engaged in a long term advertising campaign about the practices at issue in the FAC, which might otherwise enable them to avoid pleading reliance on a particular advertisement with specificity.  *See Tobacco II*, 46 Cal. 4th at 328 (holding a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where … those misrepresentations and false statements were part of an extensive and long-term advertising campaign").

In sum, notwithstanding Plaintiffs' arguments that Costco has made affirmative misrepresentations or has made partial representations, their claims must be limited to alleged omissions from product packaging.

### 1.     The Duty to Disclose.

Plaintiffs allege that, "[g]iven its representations about excluding slave labor from its chain of supply, … Costco has a duty to accurately disclose to consumers that slavery, forced labor and human trafficking have been tainting and continue to taint Costco's supply chain for farmed prawns."  (FAC ¶ 25.)  Costco moves to dismiss Plaintiffs claims under the UCL and the CLRA, in part, on the basis that it did not have a duty to disclose this information.

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition.  The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'"  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003). To state a claim under the UCL, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely

United States District Court
Northern District of California

9

to deceive members of the public)." *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

Plaintiffs allege Costco violated all three prongs of the UCL. The Court will address Plaintiffs' claims under the unlawful and unfair prongs in more detail in Section B._, infra. In this portion of the Order, the Court focuses on the claims under the fraudulent prong. Under both the UCL and the CLRA, in order to determine whether a representation is misleading, a court evaluates whether members of the public are likely to be deceived. *Tobacco II*, 46 Cal. 4th at 312 (allegations that the fraudulent deception was "actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages" are not necessary) *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006).[8]

A plaintiff may base a UCL claim or a CLRA claim "in terms constituting fraudulent omissions, [but] to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006); *see also id.* at 838 (finding that plaintiff failed to state a UCL claim, because "the failure to disclose a fact one has no affirmative duty to disclose" is not likely to deceive a reasonable consumer). In general, "California courts have … rejected a broad obligation to disclose[.]" *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1141 (9th Cir. 2012); *cf. Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 Fed. Appx. 608, 609 (9th Cir. 2014).[9]

In *Wilson,* the plaintiffs alleged the defendant was aware of, but concealed, a design defect

---

[8]     The standard is the same under the FAL.  *See Colgan*, 135 Cal. 4th at 680.

[9]     Although *Gray* is unpublished, the Court finds it instructive.  The Ninth Circuit concluded the plaintiffs could not state a claim under the UCL or the CLRA, on a pure omissions theory, where they alleged the defendant failed to disclose internal fuel economy data, which plaintiffs alleged was contrary to EPA estimates.  *Gray*, 554 Fed. Appx. at 609.  The *Gray* court reasoned "California law instructs that a manufacturer's duty to its consumers is limited to its warranty, unless a safety issue is present or there has been some affirmative misrepresentation."  *Id.*

that rendered certain of its laptop computers unusable and that posed a safety risk. *Wilson*, 668 F.3d at 1138. The plaintiffs argued a "concealed fact need only be 'material,'" to state a claim under the CLRA and relied on *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. 2007). The *Wilson* court rejected that argument. It distinguished cases on which the plaintiffs had relied on the basis that, in those cases, the defendant either made affirmative misrepresentations or the cases involved services rather than products. *Id.* at 1143. It also stated that even if it applied "the factors from *Falk* regarding materiality[,] … for the omission to be material, the failure must still pose safety concerns." *Id.*, 668 F.3d at 1142 (internal quotations and citation omitted).[10]

In *Hodson*, the plaintiff alleged the defendant, which marketed and distributed chocolate products, failed to disclose that some of the cocoa beans used to make its products "come from Cote d'Ivoire, where children," some of whom had been sold or kidnapped, "and forced laborers" were forced to work under dangerous conditions. *Hodson*, 163 F. Supp. 3d at 1020. The court, relying on *Wilson* and "overwhelming authority to the contrary," found the defendant did not have a duty to disclose these "horrific labor practices," because the plaintiffs neither alleged those practices posed a safety risk to consumer nor alleged they were a product defect. *Id.* at 1025-26. Therefore, the court held the "duty to disclose does not extend to situations, as here, where information may persuade a customer to make different purchasing decisions." *Id.* at 1026; *see also Wirth*, 2016 WL 4711234, at *5-6 (finding, in pure omissions case, defendant had no duty to disclose alleged labor violations in fishing industry on packaging for pet food that contained seafood caught in Thailand and that was manufactured in Thailand).

In *McCoy*, the plaintiff's claims were essentially identical to the claims alleged in *Hodson*, although they named a different chocolate manufacturer as a defendant. *McCoy,* 173 F. Supp. 3d at 956 (plaintiff alleged defendant failed "to disclose on [its] packaging of ... chocolate products that some of the cocoa used therein originated at farms in [the Ivory Coast] that use slave labor

---

[10]     In *Falk*, the court held a failure to disclose can constitute actionable fraud under the CLRA in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Id.*, 496 F. Supp. 2d at 1095 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997)).

United States District Court
Northern District of California

and the worst forms of child labor").[11]  Following *Wilson* and *Hodson*, the court determined that the "the weight of authority limits a duty to disclose under the CLRA to issues of product safety, unless disclosure is necessary to counter an affirmative misrepresentation." *Id.* at 966.  Because the plaintiff did not allege an omission of "known dangers to the safety of consumers, there is no duty to disclose that is applicable to this case." *Id.*

Plaintiffs argue that *Wilson's* holding is not as broad as Costco argues, and they urge the Court not to follow the reasoning set forth in *McCoy*, *Hodson* and *Wirth*.  In support of this argument, Plaintiffs rely on the *Stanwood* case, *supra*.  The Court does not find Plaintiffs' reliance on *Stanwood* persuasive.  First, it "is not free to deviate from the Ninth Circuit's construction of California law in *Wilson* absent subsequent interpretation from California's courts that the interpretation was incorrect." *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1036 (N.D. Cal. 2014).  Second, it appears that the *Stanwood* case represents a minority view on this issue.  *See, e.g., Hodson*, 162 F. Supp. 3d at 1025 ("*Stanwood* stands alone in" the conclusion that *Wilson* is limited to product liability cases where warranties protected consumers.).  Third, the Court finds the reasoning set forth in *McCoy* and *Hodson* on this issue persuasive.  For the reasons set forth in those cases, it concludes that the Ninth Circuit's holding in *Wilson* is not as narrow as the *Stanwood* court construed it to be.  *See Hodson*, 162 F. Supp. 3d at 1025-26; *McCoy*, 173 F. Supp. 3d at 995-66.

Finally, the Court concurs with the *McCoy* court that "some bright-line limitation on a manufacturer's duty to disclose is sound policy, given the difficulty of anticipating exactly what information some customers might find material to their purchasing decisions and wish to see on product labels." *McCoy*, 173 F. Supp. 3d at 966; *see also Hall v. SeaWorld Entertainment, Inc.*, No. 15-CV-660-CAB-RBB, 2015 WL 9659911, at *7 (S.D. Cal. Dec. 23, 2015) ("Under the standard argued by Plaintiffs, any consumer would have standing to sue any company that fails to disclose product ingredients or components, or business practices that could cause that consumer

---

[11]     The *McCoy* court also decided the *Dana* case, cited above.  Because the Court's reasoning in *Dana* is substantially similar to, if not identical to the reasoning in *McCoy*, which is published, this Court has relied on *McCoy*.

1 to regret patronizing that business.").

2   Plaintiffs do not allege that the labor practices described in the FAC, while horrific,

3 constitute a safety risk to consumers or constitute a product defect.  On the facts of this case,

4 Plaintiffs fail to show Costco had a duty to disclose the allegedly omitted information.  Therefore,

5 they fail to state a claim under the CLRA and fail to state a claim under the fraudulent prong of the

6 UCL.  *McCoy,* 173 F. Supp. 3d at 966-67; *Hodson*, 162 F. Supp. 3d at 1026; *see also Wirth*, 2016

7 WL 471234, at *3-*5.  Even if *Wilson's* holding should be limited to cases involving products

8 covered by a warranty, the Court still is not persuaded Plaintiffs have alleged facts to establish a

9 duty to disclose.

10   As set forth in *Falk,* there are four circumstances that may give rise to a duty to disclose,

11 only three of which are at issue in this case.  496 S. Supp. 2d at 1095.  First, Plaintiffs argue

12 Costco had exclusive knowledge of the facts, which were not known to Plaintiffs.  In *McCoy*, the

13 plaintiff also argued the defendant had a duty to disclose the facts about labor practices in its

14 supply chain for cocoa based on its purportedly superior knowledge of the allegedly omitted facts.

15 173 F. Supp. 3d at 967.   The court noted the plaintiff alleged that the defendant "acknowledge[d]

16 on a public website its suppliers use of slave labor," and also included other public disclosures

17 about the use of such labor in the supply chain for cocoa.  *Id.*  Based on those allegations, the court

18 found she had not alleged the defendant had exclusive or superior knowledge of the facts.  *Id.*

19 Plaintiffs, like the plaintiff in *McCoy,* include numerous paragraphs in the FAC that describe

20 public disclosures of the labor conditions in the fishing industry in Thailand and Southeast Asia

21 and the manner in which those conditions affect the supply chain for farmed prawns.  (*See, e.g,*

22 FAC ¶¶ 64-65, 77-78, 86-89.)  The Court concludes that Plaintiffs have not alleged facts to show

23 that Costco would have superior, let alone exclusive, knowledge of those facts.

24   Plaintiffs also assert that Costco actively concealed the facts about the supply chain for its

25 farmed prawns, but their argument on this point is focused on their assertion that Costco made

26 partial representations.  (*See* Opp. Br. at 6:25-10:21.)  In addition, the FAC does not contain any

27 facts that would support an inference that Costco actively concealed information about abuses in

28 the supply chain for farmed prawns.

United States District Court
Northern District of California

Third, Plaintiffs argue Costco made partial representations but suppressed other material facts. In the FAC, the Plaintiffs do allege Costco made partial representations, but those allegations pertain to the Disclosure and the Code of Conduct. Plaintiffs do not allege that they relied on those statements. In addition, Plaintiffs do not allege Costco made partial representations on the product packaging that are misleading absent a disclosure. The Court concludes they cannot rely on a partial representation theory to allege a duty to disclose.

Accordingly, the Court GRANTS Costco's motion to dismiss on the basis that Plaintiffs fail to allege it had duty to disclose the information about labor abuses in the supply chain for farmed prawns from Southeast Asia on its product packaging.

**2.      The Court Dismisses the Remainder of the UCL Claim.**

Plaintiffs also pursue claims against Costco under the unlawful and unfair prongs of the UCL. Costco argues that Plaintiffs fail to allege facts to support a claim under either prong.

**a.      Unlawful prong.**

The UCL's unlawful prong proscribes "anything that can be properly called a business practice and that at the same time is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001) (internal quotations omitted). "[A] violation of another law is a predicate for stating a cause of action" under the unlawful prong. *Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App 4th 1544, 1554 (2007). Plaintiffs allege that Costco's conduct violates the FAL and the CLRA. (FAC ¶ 195.) However, for the reasons set forth in Section B.1 and Section B.3, Plaintiffs fail to state a claim under either statute. Therefore, they fail to state a UCL claim based on alleged violations of those statutes. *See, e.g,McCoy*, 173 F. Supp. 3d at 967; *Berryman*, 152 Cal. App. 4th at 1554.

Plaintiffs also allege that Costco's conduct "in sourcing and selling farmed prawns actively contributes to the use of slave labor in violation of bans on such human trafficking enacted by the U.S., California and by international conventions, including but not limited to the Tariff Act of 1930[,] … [t]he Anti-Trafficking in Persons Act, the UN Declaration on Human Rights, and California Penal Code § 236, § 237, *et seq.*," and the Supply Chains Act. (FAC ¶ 195.) The Supply Chains Act does not clearly speak to product labels, and, to the extent Plaintiffs are

14

United States District Court
Northern District of California

1   attempting to suggest the Disclosure does not comply with the requirements of the Supply Chains

2   Act, the Court also has concluded that Plaintiffs lack statutory standing to pursue claims based on

3   the Disclosure.  With respect to the remaining statutes and the Declaration of Human Rights cited

4   in paragraph 195, Plaintiffs do not attempt to show how the allegations in the FAC support alleged

5   violations of these laws in their opposition brief.  Rather, they simply repeat the allegations set

6   forth in the FAC.  (*Compare* FAC ¶ 195 *with* Opp. Br. at 12:4-12.)

7        The Court concludes Plaintiffs fail to plead a violation of the UCL's unlawful prong.

8            **b.**       **Unfair Prong.**

9        The UCL also proscribes business practices that are "unfair," but it does not define that

10  term.  In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, the California Supreme

11  Court considered a number of definitions relied upon by the courts of appeal and found they were

12  "too amorphous and provide too little guidance to courts and businesses."  20 Cal. 4th 163, 185

13  (1999).  The *Cel-Tech* court determined that, in claims between direct competitors, "the word

14  'unfair' … means conduct that threatens an incipient violation of an antitrust law, or violates the

15  policy or spirit of one of those laws because its effects are comparable to or the same as a violation

16  of the law, or otherwise significantly threatens or harms competition."  *Id.* at 187.  The *Cel-Tech*

17  court "limited" the test to claims between competitors and to allegations of anticompetitive

18  practices.  *Id.* at 187 n.12.  Thus, "the proper definition of 'unfair' conduct against consumers 'is

19  currently in flux' among California courts."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152,

20  1169 (9th Cir. 2012) (quoting *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 735 (9th Cir.

21  2007)); *see also McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014)

22  (citing *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252 (2011)).

23        To the extent California courts examine whether the alleged practice "is immoral,

24  unethical, oppressive, unscrupulous or substantially injurious to consumers" and weigh "the utility

25  of the defendant's conduct against the gravity of the harm to the alleged victim," the Court

26  concludes Plaintiffs do not allege facts to satisfy this test.  *See Boschma*, 198 Cal. App. 4th at 252

27  (internal quotations and citations omitted).  As in the *McCoy* and *Hodson* cases, the harm

28  Plaintiffs have alleged is that they would not have purchased the farmed prawns had they been

aware of the potential of slave and forced labor in the supply chain.  In *Hodson,* the court held that, given the harm at issue, the defendant's conduct was not "unfair" within the meaning of the UCL.

> Such information [about the prospect for child labor in the defendant's supply chain] is, in fact, readily available to consumers on Mars's website.  Given that Hodson, like any other consumer, has access to information about the source of Mars's cocoa beans, the absence of such information on the packaging is not "substantially injurious to consumers" or necessarily immoral. Granting that the labor practices at issue are immoral, there remains an important distinction between them and the actual harm for which Hodson seeks to recover, namely his purchase of Mars's chocolate products absent any disclosure.  Mars's failure to disclose information it had no duty to disclose in the first place is not substantially injuries, immoral, or unethical[.]

162 F. Supp. 3d at 1027; *accord McCoy*, 173 F. Supp. 3d at 969.  The Court agrees with this reasoning.

Similarly, to the extent California courts require a UCL claim to be "tethered to specific constitutional, statutory, or regulatory provisions," the Court concludes Plaintiffs' allegations are not sufficient.  *See Boschma*, 198 Cal. App. 4th at 252 (citations omitted).  Again, as in the *McCoy* and *Hodson* cases, "the crux of" Plaintiffs' claim "is not that [Costco] used slave labor …, but rather that [Costco] does not disclose the existence of those labor abuses in its supply chain on the packaging of its products."  *McCoy*, 173 F. Supp. 3d at 968; *see also Hodson*, 162 F. Supp. 3d at 1027.  As in those cases, the Plaintiffs have not identified a particular policy or other statutory or regulatory provision that demonstrate "it is 'unfair' within the meaning of the UCL for [a] manufacturer to fail to disclose" such violations on its product packaging.  *McCoy*, 173 F. Supp. 3d at 968.  The Court concludes Plaintiffs have failed to allege a violation of the unfair prong of the UCL.

Accordingly, the Court GRANTS Costco's motion to dismiss for these reasons as well.

### 3.      The Court Dismisses the FAL Claim.

Costco moves to dismiss the FAL claim on the basis that the FAL does not apply to omissions.  The FAL states, in part, that "[i]t is unlawful for any ... corporation ... with intent directly or indirectly to dispose of real or personal property... to make or disseminate ... any

United States District Court
Northern District of California

1   statement ... which is known, or by the exercise of reasonable care should be known, to be untrue

2   or misleading[.]"  Cal. Bus. & Prof. Code § 17500.  "[M]any courts have held a plaintiff who

3   asserts that a business omitted a material fact in its advertisements, labels, or literature has not

4   stated a claim under the FAL."  *Hodson*, 162 F. Supp. 3d 1023.  However, some courts have

5   concluded otherwise.  *Id.* (citing cases).

6          The *Hodson* court found these two lines of cases were "not necessarily discordant."  *Id.*  It

7   concluded that if "the crux of a plaintiff's FAL claim is that the defendant did not make any

8   statement at all about a subject, then a claim under the FAL may not advance."  *Id.*  However, if a

9   plaintiff alleges "the defendant actually made a statement, but omitted information that undercuts

10  the veracity of the statement," a claim under the FAL could proceed.  *Id.*  Because the plaintiff

11  *Hodson* alleged the defendant failed "to issue any statement at all" about the alleged labor abuses

12  in its supply chain.  Therefore, the court concluded he failed to state a claim for relief and

13  dismissed the FAL claim without leave to amend.  *Id.*

14         In *McCoy*, the court also found that the plaintiff failed to state a claim under the FAL.

15  *McCoy*, 173 F. Supp. 3d at 969-70.  The court reasoned that the "plain language of the statute --

16  which prohibits *making, disseminating,* or *causing* the dissemination of false or misleading

17  statements -- does not encompass omissions."  *Id.* at 969 (emphasis in original).  It then

18  distinguished a number of cases on which the plaintiff relied and concluded those cases either

19  failed to address the issue or involved at least some form of affirmative misrepresentation.  *Id.* at

20  969-70.  It concluded, following *Hodson*, that because the plaintiff's claims were based solely on

21  omissions, she failed to allege the defendant "'made or disseminated or caused to be made or

22  disseminated' any false or misleading statement," and failed to state a claim under the FAL.  *Id.* at

23  970 (brackets in *McCoy* omitted).

24         Plaintiffs here have not expressly limited their claims to pure omissions, and although the

25  FAC includes allegations about partial or affirmative representations.  However, as the Court has

26  concluded, Plaintiffs do not allege they relied on those statements, and it is clear from the FAC

27  that the crux of their claims is that Costco omitted information about labor abuses in its supply

28  chain from the product packaging.  That is, the "focus" of their "claim is on the message that does

1   *not* appear on" Costco's prawn product packaging.  *Id.* at 1024 n.3 (emphasis in original).  The

2   Court finds the reasoning in *McCoy* and *Hodson* persuasive, and it concludes that when an FAL

3   claim is based on pure omissions, it cannot proceed.  Because Plaintiffs' claims are limited to

4   alleged omissions, they fail to state a claim under the FAL.

5        Accordingly, the Court GRANTS Costco's motion to dismiss on this basis as well.

6   **C.     The Court Denies Plaintiffs Leave to Amend.**

7        In general, if the allegations are insufficient to state a claim, a court should grant leave to

8   amend, unless amendment would be futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291,

9   296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242,

10  246-47 (9th Cir. 1990).  However, where a plaintiff has previously amended a complaint, "a

11  district court's discretion to deny leave to amend is particularly broad[.]"  *Salameh v. Tarsadia

12  Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  In its previous Order, the dismissed solely on the

13  basis of standing.  However, the Defendants each raised many of the same arguments in their

14  original motions to dismiss that they have raised in their renewed motions to dismiss.  In light of

15  the Court's ruling on the issue of duty, and given Plaintiffs' consistent representations in the

16  original Complaint and the FAC that their reliance was based on product packaging, rather than on

17  any of Costco's statements in other contexts, the Court concludes it would be futile to grant

18  Plaintiffs further leave to amend.

**CONCLUSION**

20  For the foregoing reasons, the Court GRANTS the motions to dismiss, and it dismisses the

21  claims with prejudice.  The Court shall enter a separate judgment, and the Clerk shall close the

22  file.

23  **IT IS SO ORDERED.**

24  Dated: January 24, 2017

JEFFREY S. WHITE
United States District Judge